```
1                     UNITED STATES DISTRICT COURT
                       NORTHERN DISTRICT OF OHIO
2                          EASTERN DIVISION

3      UNITED STATES OF AMERICA,      Case No. 1:16-cr-00224-PAG-3
                                      Cleveland, Ohio
4              Plaintiff,             Wednesday, November 7, 2018
                                      11:45 a.m.
5          vs.

6      RADU MICLAUS,

7              Defendant.

8

9           TRANSCRIPT OF FINAL PRETRIAL PROCEEDINGS
           BEFORE THE HONORABLE PATRICIA A. GAUGHAN,
10             CHIEF UNITED STATES DISTRICT JUDGE

11

12     APPEARANCES:

13     For the Government:      Duncan T. Brown
                                Assistant United States Attorney
14                              801 West Superior Avenue
                                400 U.S. Court House
15                              Cleveland, Ohio   44113
                                216-622-3600
16

17     For the Defendant:       Michael J. O'Shea
                                Lipson O'Shea
18                              110 Hoyt Block Bldg.
                                700 West St. Clair Avenue
19                              Cleveland, Ohio   44113
                                216-241-0011
20

21     Official Court Reporter: Heidi Blueskye Geizer,
                                Certified Realtime Reporter
22                              United States District Court
                                801 West Superior Avenue
23                              Cleveland, Ohio   44113
                                216-357-7092
24
       Proceedings recorded by mechanical stenography, transcript
25     produced by computer-aided transcription.
```

1  MORNING SESSION, WEDNESDAY, NOVEMBER 7, 2018  11:45 A.M.
2                    (Call to order of the Court.)
3              THE COURT:  We are here in the matter of the
4  United States of America versus Radu Miclaus, Case Number
5  16-cr-224.
6       Present in court is Mr. Miclaus.  Is that correct,
7  sir?
8              THE DEFENDANT:  Yes.
9              THE COURT:  And did I pronounce your name
10  correctly?
11             THE DEFENDANT:  Yes, Your Honor.
12             THE COURT:  Represented by his attorney,
13  Mr. Michael O'Shea.
14             MR. O'SHEA:  Good morning, Your Honor.
15             THE COURT:  Good morning.
16        On behalf of the government, Mr. Duncan Brown.
17             MR. BROWN:  Good morning, Your Honor.
18             THE COURT:  Good morning.
19        Mr. Miclaus, we are here today for purposes of a final
20  pretrial.  As you are aware, trial is set Monday, I believe
21  it's November 26th.  And so you know, I have been in
22  chambers with counsel discussing all of the technical issues
23  that relate to proceeding to trial.
24        However, it's my obligation to make certain you
25  understand all the risks you are taking here, the risks of

1  going to trial and being found guilty, and the risk of
2  pleading guilty.  I must get all of this on the record.  I
3  must make certain that you understand all of the risks.
4      I will tell you, Mr. Miclaus, I don't care what you
5  do.  I don't care if you go to trial, I don't care if you
6  plead guilty.  What I do care about is that you understand
7  everything so you can make an intelligent decision as to
8  which path to take, trial or plea of guilty.
9      I'm going to call on Mr. Brown, and I'm going to have
10 him put on the record what you are facing if you go to trial
11 and you are found guilty.  I'm also going to have him put on
12 the record any plea negotiations, and the last plea offer
13 that is on the table.
14     Please listen carefully, because after he speaks, I am
15 going to ask you some questions.
16     Fair enough?
17         THE DEFENDANT:  Yes.
18         MR. BROWN:  Thank you, Your Honor.  And these
19 numbers that I am going to go through are not the statutory
20 maximums, because those have been on the record.  These
21 would be what the government anticipates arguing for after
22 trial based on the --
23         THE COURT:  Sentencing guidelines.
24         MR. BROWN:  Correct.
25         THE COURT:  Mr. Miclaus, let me stop

1    Mr. Brown.  Are you familiar with the advisory sentencing
2    guidelines?
3                    THE DEFENDANT:  Yes, Your Honor.
4                    THE COURT:  So you have discussed with
5    Mr. O'Shea all of the factors I take into account when I
6    sentence somebody, and that includes the sentencing
7    guidelines, which are advisory in nature.
8                    THE DEFENDANT:  Yes, Your Honor.
9                    THE COURT:  All right, fair enough.
10           Go ahead, Mr. Brown.
11                    MR. BROWN:  Thank you, Your Honor.
12           Your Honor, the government calculates approximately
13   that the adjusted base offense level for all of the counts
14   of conviction would put the defendant at approximately a 38.
15   And I am going to explain how we get to that, because that
16   includes loss values of over $3.5 million which would take
17   him to that level also.
18           Increases for use of special skill, use of money
19   laundering, sophisticated money laundering means, and also
20   moving money overseas to evade detection.  And also an
21   aggravating role as a manager within the scheme of three
22   levels.
23           Again, our calculations would put him in approximately
24   a 38.  We wouldn't anticipate any criminal history based on
25   our investigation.  So that would put him at approximately

1    235 months to 293 months, which is a level 38, like I said.

2    The one outstanding issue that we would argue is there
3    are five aggravated identity theft counts.  We anticipate
4    based on witness testimony, we understand that it's common
5    practice and the Court's practice when you have multiple
6    aggravated identity thefts possibly not to stack all of them
7    consecutively, so we would be asking the Court for no fewer
8    than three to run consecutively, which would be six years.
9    We believe based on the evidence and on the nature of the
10   crime that would be appropriate.

11   So the government would anticipate based on the
12   evidence we believe would be coming in, plus the relevant
13   conduct, that we would be arguing at sentencing to be asking
14   for a sentence somewhere between 22 to 28 years, Your Honor.

15   Currently the government has been in extensive and
16   ongoing conversations with Mr. O'Shea.  We talk on a pretty
17   regular basis, not just about the status of the case, but
18   also about potential resolutions.  At one point in time we
19   had talked about an offer of approximately eight years.

20   THE COURT:  I'm sorry?

21   MR. BROWN:  Of eight years, but since that
22   time that offer has been rescinded, and that's the state of
23   conversations right now.  Both sides are getting ready for
24   trial rather than --

25   THE COURT:  So are you saying there is no plea

1   offer on the table?
2             MR. BROWN: Right now that offer of eight
3   years has been rescinded. Again, Mr. O'Shea and I continue
4   to talk, but there is no active plea offer from the
5   government's point of view that we've extended or continued
6   to extend.
7             THE COURT: Mr. Brown, let me ask you this.
8   If Mr. Miclaus would want to accept that plea offer today,
9   would you consider allowing him to do so?
10            MR. BROWN: Not eight years, Your Honor. The
11  negotiations would have to reflect the fact that we've
12  continued to prepare for trial, and we've made arrangements
13  for witnesses to come in from all around the world for this
14  trial, and also other change of circumstances in this case.
15       So the ability to plea is always open. The government
16  will always take the phone call and always have that
17  conversation with Mr. O'Shea. However, eight years would
18  not be on the table, it would be something above eight
19  years.
20            THE COURT: I see. So it was on the table, it
21  was rejected.
22            MR. BROWN: That's correct.
23            THE COURT: And then the negotiations stopped.
24            MR. BROWN: Correct. But not as a reflection
25  of a breakdown in communication, just in the natural

1  progression of the life of this case, Your Honor.

2  THE COURT: I understand. But you're not
3  saying that you wouldn't be open to plea bargaining even
4  though it is on a late date.

5  MR. BROWN: Recognizing the difficulty of all
6  of those mechanics, the government is always welcome to
7  those sorts of discussions. We would have those
8  conversations with Mr. O'Shea, absolutely, on behalf of his
9  client.

10  THE COURT: Mr. O'Shea.

11  MR. O'SHEA: That's fair, Judge.

12  THE COURT: Did everything Mr. Brown say or
13  said accurate?

14  MR. O'SHEA: It is, Judge, including I should
15  add, Judge, that some of the discussions were just to have
16  Mr. Miclaus maybe plead guilty as charged open, and then
17  just have, you know, a sentencing trial, which would really
18  be what it might end up boiling down to at the end of the
19  day.

20  But I've talked over these issues with my client, and
21  I even -- just to be quite frank with the Court, and I said
22  this to the government, even if you talked about your eight
23  and if I pushed back with something less than that, maybe.

24  So this was a few months ago: If we're in jail now,
25  Mr. Miclaus, and I've got you so you only did, for instance,

1 say three more years from today, and he said, no, I won't do
2 that, so then I said to myself, my brain says, well, then
3 why am I bothering at this point to even begin the
4 negotiations.
5 And I think after talking with him today, he's where
6 he was when I spoke to him a month ago.
7 THE COURT: And you did communicate that the
8 government's position is looking at all of the advisory
9 sentencing guidelines, he would be looking in the area of 22
10 to 28 years if he is found guilty at trial.
11 MR. O'SHEA: I actually said 25 years. I cut
12 it right down the middle. So he's aware it's north of 20.
13 THE COURT: All right, okay.
14 So now, Mr. Miclaus, I have to make sure, sir, that
15 you understand everything. The government's lawyer believes
16 that if you go to trial and you are found guilty of all of
17 the counts that you would be looking at, using the advisory
18 sentencing guidelines, you would be looking at in the area
19 of 22 to 28 years.
20 I don't know if that's the case, and I wouldn't know
21 until after I would refer your matter to the Probation
22 Department for a presentence investigation report and I
23 thoroughly reviewed the report, and listened to argument.
24 Only then would I know where you would fall within the
25 guideline range.

1       THE DEFENDANT: I understand.

2       THE COURT: But the government believes that
3  you are looking at somewhere in the area of 22 to 28 years.
4  Do you understand how the government came up with that
5  range?

6       THE DEFENDANT: Yes, Your Honor, I understand.
7  I understand.

8       THE COURT: All right. No questions of me?

9       THE DEFENDANT: No.

10      THE COURT: Okay. The government has
11 indicated that you did in fact reject eight years, and so
12 therefore that's no longer on the table, but Mr. Brown
13 indicated he's still open to plea bargaining.

14   Do you have any interest in having plea bargain
15 discussions with the government?

16      THE DEFENDANT: Yes, Your Honor.

17      THE COURT: Okay. Have you communicated
18 anything with your lawyer so your lawyer can communicate it
19 with the government, or do you wish to do it on the record
20 in open court?

21      THE DEFENDANT: I think --

22      MR. O'SHEA: One thing he just said to me, "If
23 I pled and they let me go today, I'd do it."

24      THE COURT: I'm sorry, Mr. O'Shea --

25      MR. O'SHEA: I should stand.

1     THE COURT:  That's all right, I just didn't
2  hear it all.
3     MR. O'SHEA:  That if -- one of the discussions
4  that we had was -- I don't mean to laugh -- was that "If I
5  pled, they'd have to let me go today.  I'd have time served,
6  and I'd be done."
7     And that's the only thing that he would do.
8     THE COURT:  Oh, that's not --
9     MR. BROWN:  Your Honor, the government would
10  not agree to that.
11     THE COURT:  That is not going to happen.
12     MR. O'SHEA:  I think that's what he was -- I
13  think.
14     THE COURT:  I see.  Is that what you meant?
15     THE DEFENDANT:  Not quite, but close.  This
16  was a discussion a year ago, so --
17     THE COURT:  Mr. Brown has made it quite clear
18  that that would not be acceptable to the government.  And
19  Mr. Miclaus, I think the government has made it clear that
20  they're looking in the area of eight years, and that was
21  rejected, so it's no longer on the table.  So I think you've
22  got to be up in that range for the government to even
23  consider it.
24     THE DEFENDANT:  I understand, Your Honor.
25     THE COURT:  Okay.  Why don't you just

1   privately have a conversation with Mr. O'Shea, and I'll just
2   wait.
3           Did you want to say something?
4               MR. BROWN:  No, Your Honor.  I was just
5   standing to be polite.
6               THE COURT:  I'm sorry?
7               MR. BROWN:  I was just standing to be polite.
8               THE COURT:  Oh, all right.
9               MR. O'SHEA:  Just so I can ask, three or four
10  years total, including time served.
11              MR. BROWN:  No.
12              MR. O'SHEA:  Okay.
13              THE COURT:  Gentlemen, may I see you at
14  side-bar, please?
15              MR. O'SHEA:  Which side, Judge?
16              THE COURT:  Over here.  I'm sorry.
17              (Discussion had off the record at side-bar.)
18              (Proceedings in open court:)
19              THE COURT:  Mr. Miclaus, Mr. Brown has made it
20  very clear, the eight years is no longer on the table, and
21  you are coming up with numbers that are below eight.
22  Frankly, you'd have to come up with a number that's above
23  eight, and how close to eight the government is willing to
24  accept, I don't know.  That's where your lawyer would have
25  to talk to Mr. Brown.

1  But I want to be very realistic here.  You are facing
2  in the area of 22 to 28 years.  The government would allow
3  you to plead to something significantly lower than that, but
4  it's not eight years.  So it's somewhere between 8 years and
5  22 years, basically.
6  So if you're not willing to negotiate in that range,
7  then I just don't think -- I think you've made your decision
8  then to go to trial.  Is that fair?
9  THE DEFENDANT:  Yes, Your Honor.
10  THE COURT:  All right.  So am I correct, you
11  are not interested in the government considering anything
12  between 8 years and 22 years?
13  THE DEFENDANT:  Yes, Your Honor, that's
14  correct.  I am not considering it, anything from 8 to 22.
15  THE COURT:  And you understand what you are
16  facing --
17  THE DEFENDANT:  Yes.
18  THE COURT:  -- if you go to trial.
19  THE DEFENDANT:  Yes, Your Honor, I understand.
20  THE COURT:  Okay.  Mr. O'Shea, I think I've
21  done my duty.
22  MR. O'SHEA:  Absolutely, Judge.
23  THE COURT:  I think you're satisfied, your
24  client totally understands the risks he's taking here.
25  MR. O'SHEA:  I did before you climbed on the

1  bench, Judge, and I'm even more convinced now.
2              THE COURT: Okay. And you do understand, sir,
3  that regardless, you're going to get credit for time served.
4              THE DEFENDANT: Yes, Your Honor.
5              THE COURT: So no matter whether you go to
6  trial and you're found guilty or whether you plead guilty to
7  a significantly lower number, you would get credit for time
8  served.
9              THE DEFENDANT: I understand.
10             THE COURT: Do you have any questions of me?
11             THE DEFENDANT: No, Your Honor.
12             THE COURT: Do you have any questions of
13 Mr. Brown? And he may choose not to answer them, but I'm
14 going to give you the opportunity to ask.
15             THE DEFENDANT: No, Your Honor, no questions.
16             THE COURT: Okay. The jury will be here
17 Monday morning, November 26th.
18             THE DEFENDANT: Thank you, Your Honor.
19             MR. O'SHEA: One last thing, Judge.
20             THE COURT: Sure.
21             MR. O'SHEA: I think the record should
22 reflect, notwithstanding my client is from Romania, and as I
23 think you can already tell, we don't need an interpreter for
24 him. He has command of the English language. I think we
25 ought to make that --

1           THE COURT: I can tell. Is that right,
2 Mr. Miclaus?
3           THE DEFENDANT: Yes.
4           THE COURT: Yes, I agree with you.
5           MR. O'SHEA: Thank you.
6           THE COURT: All right. You're all set for
7 today.
8           MR. O'SHEA: Thank you, Judge.
9           MR. BROWN: Thank you, Your Honor.
10           - - - - -
11           (Proceedings adjourned.)
12
13
14
15           C E R T I F I C A T E
16
17    I certify that the foregoing is a correct transcript
18 from the record of proceedings in the above-entitled matter.
19
20      s/Heidi Blueskye Geizer_____January 22, 2020
21      Heidi Blueskye Geizer          Date
      Official Court Reporter
22
23
24
25