vism, and the type, amount, and intensity of programming that most effectively reduces the risk of recidivism; and

''(4) reviewing and validating the risk and needs assessment system.

''(f) BUREAU OF PRISONS COOPERATION.—The Director of the Bureau of Prisons shall assist the Independent Review Committee in performing the Committee's duties and promptly respond to requests from the Committee for access to Bureau of Prisons facilities, personnel, and information.

''(g) REPORT.—Not later than 2 years after the date of enactment of this Act, the Independent Review Committee shall submit to the Committee on the Judiciary and the Subcommittee on Commerce, Justice, Science, and Related Agencies of the Committee on Appropriations of the Senate and the Committee on the Judiciary and the Subcommittee on Commerce, Justice, Science, and Related Agencies of the Committee on Appropriations of the House of Representatives a report that includes—

''(1) a list of all offenses of conviction for which prisoners were ineligible to receive time credits under section 3632(d)(4)(D) of title 18, United States Code, as added by section 101(a) of this Act, and for each offense the number of prisoners excluded, including demographic percentages by age, race, and sex;

''(2) the criminal history categories of prisoners ineligible to receive time credits under section 3632(d)(4)(D) of title 18, United States Code, as added by section 101(a) of this Act, and for each category the number of prisoners excluded, including demographic percentages by age, race, and sex;

''(3) the number of prisoners ineligible to apply time credits under section 3632(d)(4)(D) of title 18, United States Code, as added by section 101(a) of this Act, who do not participate in recidivism reduction programming or productive activities, including the demographic percentages by age, race, and sex;

''(4) any recommendations for modifications to section 3632(d)(4)(D) of title 18, United States Code, as added by section 101(a) of this Act, and any other recommendations regarding recidivism reduction.

''(h) TERMINATION.—The Independent Review Committee shall terminate on the date that is 2 years after the date on which the risk and needs assessment system authorized by sections 3632 and 3633 of title 18, United States Code, as added by section 101(a) of this Act, is released.''

### § 3632. Development of risk and needs assessment system

(a) IN GENERAL.—Not later than 210 days after the date of enactment of this subchapter, the Attorney General, in consultation with the Independent Review Committee authorized by the First Step Act of 2018, shall develop and release publicly on the Department of Justice website a risk and needs assessment system (referred to in this subchapter as the ''System''), which shall be used to—

(1) determine the recidivism risk of each prisoner as part of the intake process, and classify each prisoner as having minimum, low, medium, or high risk for recidivism;

(2) assess and determine, to the extent practicable, the risk of violent or serious misconduct of each prisoner;

(3) determine the type and amount of evidence-based recidivism reduction programming that is appropriate for each prisoner and assign each prisoner to such programming accordingly, and based on the prisoner's specific criminogenic needs, and in accordance with subsection (b);

(4) reassess the recidivism risk of each prisoner periodically, based on factors including indicators of progress, and of regression, that are dynamic and that can reasonably be expected to change while in prison;

(5) reassign the prisoner to appropriate evidence-based recidivism reduction programs or productive activities based on the revised determination to ensure that—

(A) all prisoners at each risk level have a meaningful opportunity to reduce their classification during the period of incarceration;

(B) to address[1] the specific criminogenic needs of the prisoner; and

(C) all prisoners are able to successfully participate in such programs;

(6) determine when to provide incentives and rewards for successful participation in evidence-based recidivism reduction programs or productive activities in accordance with subsection (e);

(7) determine when a prisoner is ready to transfer into prerelease custody or supervised release in accordance with section 3624; and

(8) determine the appropriate use of audio technology for program course materials with an understanding of dyslexia.

In carrying out this subsection, the Attorney General may use existing risk and needs assessment tools, as appropriate.

(b) ASSIGNMENT OF EVIDENCE-BASED RECIDIVISM REDUCTION PROGRAMS.—The System shall provide guidance on the type, amount, and intensity of evidence-based recidivism reduction programming and productive activities that shall be assigned for each prisoner, including—

(1) programs in which the Bureau of Prisons shall assign the prisoner to participate, according to the prisoner's specific criminogenic needs; and

(2) information on the best ways that the Bureau of Prisons can tailor the programs to the specific criminogenic needs of each prisoner so as to most effectively lower each prisoner's risk of recidivism.

(c) HOUSING AND ASSIGNMENT DECISIONS.—The System shall provide guidance on program grouping and housing assignment determinations and, after accounting for the safety of each prisoner and other individuals at the prison, provide that prisoners with a similar risk level be grouped together in housing and assignment decisions to the extent practicable.

(d) EVIDENCE-BASED RECIDIVISM REDUCTION PROGRAM INCENTIVES AND PRODUCTIVE ACTIVITIES REWARDS.—The System shall provide incentives and rewards for prisoners to participate in and complete evidence-based recidivism reduction programs as follows:

(1) PHONE AND VISITATION PRIVILEGES.—A prisoner who is successfully participating in an evidence-based recidivism reduction program shall receive—

(A) phone privileges, or, if available, video conferencing privileges, for up to 30 minutes per day, and up to 510 minutes per month; and

---

[1] So in original.

(B) additional time for visitation at the prison, as determined by the warden of the prison.

(2) TRANSFER TO INSTITUTION CLOSER TO RELEASE RESIDENCE.—A prisoner who is successfully participating in an evidence-based recidivism reduction program shall be considered by the Bureau of Prisons for placement in a facility closer to the prisoner's release residence upon request from the prisoner and subject to—

(A) bed availability at the transfer facility;

(B) the prisoner's security designation; and

(C) the recommendation from the warden of the prison at which the prisoner is incarcerated at the time of making the request.

(3) ADDITIONAL POLICIES.—The Director of the Bureau of Prisons shall develop additional policies to provide appropriate incentives for successful participation and completion of evidence-based recidivism reduction programming. The incentives shall include not less than 2 of the following:

(A) Increased commissary spending limits and product offerings.

(B) Extended opportunities to access the email system.

(C) Consideration of transfer to preferred housing units (including transfer to different prison facilities).

(D) Other incentives solicited from prisoners and determined appropriate by the Director.

(4) TIME CREDITS.—

(A) IN GENERAL.—A prisoner, except for an ineligible prisoner under subparagraph (D), who successfully completes evidence-based recidivism reduction programming or productive activities, shall earn time credits as follows:

(i) A prisoner shall earn 10 days of time credits for every 30 days of successful participation in evidence-based recidivism reduction programming or productive activities.

(ii) A prisoner determined by the Bureau of Prisons to be at a minimum or low risk for recidivating, who, over 2 consecutive assessments, has not increased their risk of recidivism, shall earn an additional 5 days of time credits for every 30 days of successful participation in evidence-based recidivism reduction programming or productive activities.

(B) AVAILABILITY.—A prisoner may not earn time credits under this paragraph for an evidence-based recidivism reduction program that the prisoner successfully completed—

(i) prior to the date of enactment of this subchapter; or

(ii) during official detention prior to the date that the prisoner's sentence commences under section 3585(a).

(C) APPLICATION OF TIME CREDITS TOWARD PRERELEASE CUSTODY OR SUPERVISED RELEASE.—Time credits earned under this paragraph by prisoners who successfully participate in recidivism reduction programs or productive activities shall be applied toward time in prerelease custody or supervised release. The Director of the Bureau of Prisons shall transfer eligible prisoners, as determined under section 3624(g), into prerelease custody or supervised release.

(D) INELIGIBLE PRISONERS.—A prisoner is ineligible to receive time credits under this paragraph if the prisoner is serving a sentence for a conviction under any of the following provisions of law:

(i) Section 32, relating to destruction of aircraft or aircraft facilities.

(ii) Section 33, relating to destruction of motor vehicles or motor vehicle facilities.

(iii) Section 36, relating to drive-by shootings.

(iv) Section 81, relating to arson within special maritime and territorial jurisdiction.

(v) Section 111(b), relating to assaulting, resisting, or impeding certain officers or employees using a deadly or dangerous weapon or inflicting bodily injury.

(vi) Paragraph (1), (7), or (8) of section 113(a), relating to assault with intent to commit murder, assault resulting in substantial bodily injury to a spouse or intimate partner, a dating partner, or an individual who has not attained the age of 16 years, or assault of a spouse, intimate partner, or dating partner by strangling, suffocating, or attempting to strangle or suffocate.

(vii) Section 115, relating to influencing, impeding, or retaliating against a Federal official by injuring a family member, except for a threat made in violation of that section.

(viii) Section 116, relating to female genital mutilation.

(ix) Section 117, relating to domestic assault by a habitual offender.

(x) Any section of chapter 10, relating to biological weapons.

(xi) Any section of chapter 11B, relating to chemical weapons.

(xii) Section 351, relating to Congressional, Cabinet, and Supreme Court assassination, kidnapping, and assault.

(xiii) Section 521, relating to criminal street gangs.

(xiv) Section 751, relating to prisoners in custody of an institution or officer.

(xv) Section 793, relating to gathering, transmitting, or losing defense information.

(xvi) Section 794, relating to gathering or delivering defense information to aid a foreign government.

(xvii) Any section of chapter 39, relating to explosives and other dangerous articles, except for section 836 (relating to the transportation of fireworks into a State prohibiting sale or use).

(xviii) Section 842(p), relating to distribution of information relating to explosives, destructive devices, and weapons of mass destruction, but only if the conviction involved a weapon of mass destruction (as defined in section 2332a(c)).

(xix) Subsection (f)(3), (h), or (i) of section 844, relating to the use of fire or an explosive.

(xx) Section 871, relating to threats against the President and successors to the Presidency.

(xxi) Section 879, relating to threats against former Presidents and certain other persons.

(xxii) Section 924(c), relating to unlawful possession or use of a firearm during and in relation to any crime of violence or drug trafficking crime.

(xxiii) Section 1030(a)(1), relating to fraud and related activity in connection with computers.

(xxiv) Section 1091, relating to genocide.

(xxv) Any section of chapter 51, relating to homicide, except for section 1112 (relating to manslaughter), 1113 (relating to attempt to commit murder or manslaughter, but only if the conviction was for an attempt to commit manslaughter), 1115 (relating to misconduct or neglect of ship officers), or 1122 (relating to protection against the human immunodeficiency virus).

(xxvi) Any section of chapter 55, relating to kidnapping.

(xxvii) Any offense under chapter 77, relating to peonage, slavery, and trafficking in persons, except for sections 1593 through 1596.

(xxviii) Section 1751, relating to Presidential and Presidential staff assassination, kidnapping, and assault.

(xxix) Section 1791, relating to providing or possessing contraband in prison.

(xxx) Section 1792, relating to mutiny and riots.

(xxxi) Section 1841(a)(2)(C), relating to intentionally killing or attempting to kill an unborn child.

(xxxii) Section 1992, relating to terrorist attacks and other violence against railroad carriers and against mass transportation systems on land, on water, or through the air.

(xxxiii) Section 2113(e), relating to bank robbery resulting in death.

(xxxiv) Section 2118(c), relating to robberies and burglaries involving controlled substances resulting in assault, putting in jeopardy the life of any person by the use of a dangerous weapon or device, or death.

(xxxv) Section 2119, relating to taking a motor vehicle (commonly referred to as ''carjacking'').

(xxxvi) Any section of chapter 105, relating to sabotage, except for section 2152.

(xxxvii) Any section of chapter 109A, relating to sexual abuse.

(xxxviii) Section 2250, relating to failure to register as a sex offender.

(xxxix) Section 2251, relating to the sexual exploitation of children.

(xl) Section 2251A, relating to the selling or buying of children.

(xli) Section 2252, relating to certain activities relating to material involving the sexual exploitation of minors.

(xlii) Section 2252A, relating to certain activities involving material constituting or containing child pornography.

(xliii) Section 2260, relating to the production of sexually explicit depictions of a minor for importation into the United States.

(xliv) Section 2283, relating to the transportation of explosive, biological, chemical, or radioactive or nuclear materials.

(xlv) Section 2284, relating to the transportation of terrorists.

(xlvi) Section 2291, relating to the destruction of a vessel or maritime facility, but only if the conduct that led to the conviction involved a substantial risk of death or serious bodily injury.

(xlvii) Any section of chapter 113B, relating to terrorism.

(xlviii) Section 2340A, relating to torture.

(xlix) Section 2381, relating to treason.

(l) Section 2442, relating to the recruitment or use of child soldiers.

(li) An offense described in section 3559(c)(2)(F), for which the offender was sentenced to a term of imprisonment of more than 1 year, if the offender has a previous conviction, for which the offender served a term of imprisonment of more than 1 year, for a Federal or State offense, by whatever designation and wherever committed, consisting of murder (as described in section 1111), voluntary manslaughter (as described in section 1112), assault with intent to commit murder (as described in section 113(a)), aggravated sexual abuse and sexual abuse (as described in sections 2241 and 2242), abusive sexual contact (as described in sections 2244(a)(1) and (a)(2)), kidnapping (as described in chapter 55), carjacking (as described in section 2119), arson (as described in section 844(f)(3), (h), or (i)), or terrorism (as described in chapter 113B).

(lii) Section 57(b) of the Atomic Energy Act of 1954 (42 U.S.C. 2077(b)), relating to the engagement or participation in the development or production of special nuclear material.

(liii) Section 92 of the Atomic Energy Act of 1954 (42 U.S.C. 2122), relating to prohibitions governing atomic weapons.

(liv) Section 101 of the Atomic Energy Act of 1954 (42 U.S.C. 2131), relating to the atomic energy license requirement.

(lv) Section 224 or 225 of the Atomic Energy Act of 1954 (42 U.S.C. 2274, 2275), relating to the communication or receipt of restricted data.

(lvi) Section 236 of the Atomic Energy Act of 1954 (42 U.S.C. 2284), relating to the sabotage of nuclear facilities or fuel.

(lvii) Section 60123(b) of title 49, relating to damaging or destroying a pipeline facility, but only if the conduct which led to the conviction involved a substantial risk of death or serious bodily injury.

(lviii) Section 401(a) of the Controlled Substances Act (21 U.S.C. 841), relating to manufacturing or distributing a controlled

substance in the case of a conviction for an offense described in subparagraph (A), (B), or (C) of subsection (b)(1) of that section for which death or serious bodily injury resulted from the use of such substance.

(lix) Section 276(a) of the Immigration and Nationality Act (8 U.S.C. 1326), relating to the reentry of a removed alien, but only if the alien is described in paragraph (1) or (2) of subsection (b) of that section.

(lx) Section 277 of the Immigration and Nationality Act (8 U.S.C. 1327), relating to aiding or assisting certain aliens to enter the United States.

(lxi) Section 278 of the Immigration and Nationality Act (8 U.S.C. 1328), relating to the importation of an alien into the United States for an immoral purpose.

(lxii) Any section of the Export Administration Act of 1979 (50 U.S.C. 4611 et seq.)[2]

(lxiii) Section 206 of the International Emergency Economic Powers Act (50 U.S.C. 1705).

(lxiv) Section 601 of the National Security Act of 1947 (50 U.S.C. 3121), relating to the protection of identities of certain United States undercover intelligence officers, agents, informants, and sources.

(lxv) Subparagraph (A)(i) or (B)(i) of section 401(b)(1) of the Controlled Substances Act (21 U.S.C. 841(b)(1)) or paragraph (1)(A) or (2)(A) of section 1010(b) of the Controlled Substances Import and Export Act (21 U.S.C. 960(b)), relating to manufacturing, distributing, dispensing, or possessing with intent to manufacture, distribute, dispense, or knowingly importing or exporting, a mixture or substance containing a detectable amount of heroin if the sentencing court finds that the offender was an organizer, leader, manager, or supervisor of others in the offense, as determined under the guidelines promulgated by the United States Sentencing Commission.

(lxvi) Subparagraph (A)(vi) or (B)(vi) of section 401(b)(1) of the Controlled Substances Act (21 U.S.C. 841(b)(1)) or paragraph (1)(F) or (2)(F) of section 1010(b) of the Controlled Substances Import and Export Act (21 U.S.C. 960(b)), relating to manufacturing, distributing, dispensing, or possessing with intent to manufacture, distribute, or dispense, a mixture or substance containing a detectable amount of N-phenyl-N-[1-(2-phenylethyl)-4-piperidinyl] propanamide, or any analogue thereof.

(lxvii) Subparagraph (A)(viii) or (B)(viii) of section 401(b)(1) of the Controlled Substances Act (21 U.S.C. 841(b)(1)) or paragraph (1)(H) or (2)(H) of section 1010(b) the Controlled Substances Import and Export Act (21 U.S.C. 960(b)), relating to manufacturing, distributing, dispensing, or possessing with intent to manufacture, distribute, or dispense, or knowingly importing or exporting, a mixture of substance containing a detectable amount of meth-amphetamine, its salts, isomers, or salts of its isomers, if the sentencing court finds that the offender was an organizer, leader, manager, or supervisor of others in the offense, as determined under the guidelines promulgated by the United States Sentencing Commission.

(lxviii) Subparagraph (A) or (B) of section 401(b)(1) of the Controlled Substances Act (21 U.S.C. 841(b)(1)) or paragraph (1) or (2) of section 1010(b) of the Controlled Substances Import and Export Act (21 U.S.C. 960(b)), relating to manufacturing, distributing, dispensing, or possessing with intent to manufacture, distribute, or dispense, a controlled substance, or knowingly importing or exporting a controlled substance, if the sentencing court finds that—

(I) the offense involved a mixture or substance containing a detectable amount of N-phenyl-N-[1-(2-phenylethyl)-4-piperidinyl] propanamide, or any analogue thereof; and

(II) the offender was an organizer, leader, manager, or supervisor of others in the offense, as determined under the guidelines promulgated by the United States Sentencing Commission.

(E) DEPORTABLE PRISONERS INELIGIBLE TO APPLY TIME CREDITS.—

(i) IN GENERAL.—A prisoner is ineligible to apply time credits under subparagraph (C) if the prisoner is the subject of a final order of removal under any provision of the immigration laws (as such term is defined in section 101(a)(17) of the Immigration and Nationality Act (8 U.S.C. 1101(a)(17))).

(ii) PROCEEDINGS.—The Attorney General, in consultation with the Secretary of Homeland Security, shall ensure that any alien described in section 212 or 237 of the Immigration and Nationality Act (8 U.S.C. 1182, 1227) who seeks to earn time credits are subject to proceedings described in section 238(a) of that Act (8 U.S.C. 1228(a)) at a date as early as practicable during the prisoner's incarceration.

(5) RISK REASSESSMENTS AND LEVEL ADJUSTMENT.—A prisoner who successfully participates in evidence-based recidivism reduction programming or productive activities shall receive periodic risk reassessments not less often than annually, and a prisoner determined to be at a medium or high risk of recidivating and who has less than 5 years until his or her projected release date shall receive more frequent risk reassessments. If the reassessment shows that the prisoner's risk of recidivating or specific needs have changed, the Bureau of Prisons shall update the determination of the prisoner's risk of recidivating or information regarding the prisoner's specific needs and reassign the prisoner to appropriate evidence-based recidivism reduction programming or productive activities based on such changes.

(6) RELATION TO OTHER INCENTIVE PROGRAMS.—The incentives described in this sub-

---

[2] So in original. Probably should be followed by a period.

section shall be in addition to any other rewards or incentives for which a prisoner may be eligible.

(e) PENALTIES.—The Director of the Bureau of Prisons shall develop guidelines for the reduction of rewards and incentives earned under subsection (d) for prisoners who violate prison rules or evidence-based recidivism reduction program or productive activity rules, which shall provide—

(1) general levels of violations and resulting reductions;

(2) that any reduction that includes the loss of time credits shall require written notice to the prisoner, shall be limited to time credits that a prisoner earned as of the date of the prisoner's rule violation, and shall not include any future time credits that the prisoner may earn; and

(3) for a procedure to restore time credits that a prisoner lost as a result of a rule violation, based on the prisoner's individual progress after the date of the rule violation.

(f) BUREAU OF PRISONS TRAINING.—The Attorney General shall develop and implement training programs for Bureau of Prisons officers and employees responsible for administering the System, which shall include—

(1) initial training to educate officers and employees on how to use the System in an appropriate and consistent manner, as well as the reasons for using the System;

(2) continuing education;

(3) periodic training updates; and

(4) a requirement that such officers and employees demonstrate competence in administering the System, including interrater reliability, on a biannual basis.

(g) QUALITY ASSURANCE.—In order to ensure that the Bureau of Prisons is using the System in an appropriate and consistent manner, the Attorney General shall monitor and assess the use of the System, which shall include conducting annual audits of the Bureau of Prisons regarding the use of the System.

(h) DYSLEXIA SCREENING.—

(1) SCREENING.—The Attorney General shall incorporate a dyslexia screening program into the System, including by screening for dyslexia during—

(A) the intake process; and

(B) each periodic risk reassessment of a prisoner.

(2) TREATMENT.—The Attorney General shall incorporate programs designed to treat dyslexia into the evidence-based recidivism reduction programs or productive activities required to be implemented under this section. The Attorney General may also incorporate programs designed to treat other learning disabilities.

(Added Pub. L. 115–391, title I, §101(a), Dec. 21, 2018, 132 Stat. 5196.)

### Editorial Notes

#### REFERENCES IN TEXT

The date of enactment of this subchapter, referred to in subsecs. (a) and (d)(4)(B)(i), is the date of enactment of Pub. L. 115–391, which was approved Dec. 21, 2018.

The First Step Act of 2018, referred to in subsec. (a), is Pub. L. 115–391, Dec. 21, 2018, 132 Stat. 5194. For complete classification of this Act to the Code, see Short Title of 2018 Amendment note under section 1 of this title and Tables.

The Export Administration Act of 1979, referred to in subsec. (d)(4)(D)(lxii), is Pub. L. 96–72, Sept. 29, 1979, 93 Stat. 503, which was classified principally to chapter 56 (§4601 et seq.) of Title 50, War and National Defense, prior to repeal by Pub. L. 115–232, div. A, title XVII, §1766(a), Aug. 13, 2018, 132 Stat. 2232, except for sections 11A, 11B, and 11C thereof (50 U.S.C. 4611, 4612, 4613).

## § 3633. Evidence-based recidivism reduction program and recommendations

(a) IN GENERAL.—Prior to releasing the System, in consultation with the Independent Review Committee authorized by the First Step Act of 2018, the Attorney General shall—

(1) review the effectiveness of evidence-based recidivism reduction programs that exist as of the date of enactment of this subchapter in prisons operated by the Bureau of Prisons;

(2) review available information regarding the effectiveness of evidence-based recidivism reduction programs and productive activities that exist in State-operated prisons throughout the United States;

(3) identify the most effective evidence-based recidivism reduction programs;

(4) review the policies for entering into evidence-based recidivism reduction partnerships described in section 3621(h)(5); and

(5) direct the Bureau of Prisons regarding—

(A) evidence-based recidivism reduction programs;

(B) the ability for faith-based organizations to function as a provider of educational evidence-based programs outside of the religious classes and services provided through the Chaplaincy; and

(C) the addition of any new effective evidence-based recidivism reduction programs that the Attorney General finds.

(b) REVIEW AND RECOMMENDATIONS REGARDING DYSLEXIA MITIGATION.—In carrying out subsection (a), the Attorney General shall consider the prevalence and mitigation of dyslexia in prisons, including by—

(1) reviewing statistics on the prevalence of dyslexia, and the effectiveness of any programs implemented to mitigate the effects of dyslexia, in prisons operated by the Bureau of Prisons and State-operated prisons throughout the United States; and

(2) incorporating the findings of the Attorney General under paragraph (1) of this subsection into any directives given to the Bureau of Prisons under paragraph (5) of subsection (a).

(Added Pub. L. 115–391, title I, §101(a), Dec. 21, 2018, 132 Stat. 5204.)

### Editorial Notes

#### REFERENCES IN TEXT

The First Step Act of 2018, referred to in subsec. (a), is Pub. L. 115–391, Dec. 21, 2018, 132 Stat. 5194. For complete classification of this Act to the Code, see Short Title of 2018 Amendment note under section 1 of this title and Tables.

The date of enactment of this subchapter, referred to in subsec. (a)(1), is the date of enactment of Pub. L. 115–391, which was approved Dec. 21, 2018.