Case: 1:16-cr-00224-PAG  Doc #: 291-2  Filed: 01/31/23  1 of 33.  PageID #: 6738



LEGAL STATUS

This site displays a prototype of a "Web 2.0" version of the daily Federal Register. It is not an official legal edition of the Federal Register, and does not replace the official print version or the official electronic version on GPO's govinfo.gov.

The documents posted on this site are XML renditions of published Federal Register documents. Each document posted on the site includes a link to the corresponding official PDF file on govinfo.gov. This prototype edition of the daily Federal Register on FederalRegister.gov will remain an unofficial informational resource until the Administrative Committee of the Federal Register (ACFR) issues a regulation granting it official legal status. For complete information about, and access to, our official publications and services, go to About the Federal Register on NARA's archives.gov.

The OFR/GPO partnership is committed to presenting accurate and reliable regulatory information on FederalRegister.gov with the objective of establishing the XML-based Federal Register as an ACFR-sanctioned publication in the future. While every effort has been made to ensure that the material on FederalRegister.gov is accurately displayed, consistent with the official SGML-based PDF version on govinfo.gov, those relying on it for legal research should verify their results against an official edition of the Federal Register. Until the ACFR grants it official status, the XML rendition of the daily Federal Register on FederalRegister.gov does not provide legal notice to the public or judicial notice to the courts.

LEGAL STATUS

# FSA Time Credits

A Rule by the Prisons Bureau on 01/19/2022

**DOCUMENT DETAILS**

**Printed version:**
PDF (https://www.govinfo.gov/content/pkg/FR-2022-01-19/pdf/2022-00918.pdf)

**Publication Date:**
01/19/2022 (/documents/2022/01/19)

**Agencies:**
Bureau of Prisons (https://www.federalregister.gov/agencies/prisons-bureau)

**Dates:**
This rule is effective on January 19, 2022.

**Effective Date:**
01/19/2022

**Document Type:**
Rule

**Document Citation:**
87 FR 2705

**Page:**
2705-2719 (15 pages)

**CFR:**
28 CFR 523
28 CFR 541

**Agency/Docket Number:**
BOP-1176P

**RIN:**
1120-AB76 (https://www.federalregister.gov/regulations/1120-AB76/first-step-act-fsa-time-credits)

**Document Number:**

Case: 1:16-cr-00224-PAG  Doc #: 291-2 Filed: 01/31/23  2 of 33.  PageID #: 6739

---

**DOCUMENT STATISTICS**

**Page views:**
21,111
as of 01/31/2023 at 12:15 pm EST

**PUBLISHED DOCUMENT**

# AGENCY:

Bureau of Prisons, Justice.

# ACTION:

Final rule.

# SUMMARY:

This rule codifies the Bureau of Prisons' (Bureau or BOP) procedures regarding the earning and application of time credits as authorized by the First Step Act of 2018 (FSA), hereinafter referred to as "FSA Time Credits" or "Time Credits." The FSA provides that

---
⬜ Start Printed Page 2706
---

eligible inmates earn FSA Time Credits toward prerelease custody or early transfer to supervised release for successfully completing approved Evidence-Based Recidivism Reduction (EBRR) Programs or Productive Activities (PAs) assigned to each inmate based on the inmate's risk and needs assessment. Inmates eligible to apply Time Credits under the FSA include individuals sentenced under the U.S. Code. As required by the FSA, an inmate cannot earn FSA Time Credits if that inmate is serving a sentence for a disqualifying offense or has a disqualifying prior conviction. However, such inmates may still earn other benefits for successfully completing recidivism reduction programming, such as increased privileges (commissary, visiting, and telephone) for participation in EBRR Programs or PAs, as authorized by the Bureau.

# DATES:

This rule is effective on January 19, 2022.

# FOR FURTHER INFORMATION CONTACT:

Sarah Qureshi, Office of General Counsel, Bureau of Prisons, phone (202) 353-8248.

# SUPPLEMENTARY INFORMATION:

This rule codifies the Bureau of Prisons' (Bureau) procedures regarding First Step Act (FSA) Time Credits, as authorized by 18 U.S.C. 3632(d)(4) (https://www.govinfo.gov/link/uscode/18/3632) and Section 101 of the First Step Act of 2018 (Pub. L. 115-391 (https://www.govinfo.gov/link/plaw/115/public/391), December 21, 2018, 132 Stat 5194) (FSA). The FSA provides that an eligible inmate in Bureau custody who successfully participates in EBRR Programs or PAs recommended based on the inmate's risk and needs assessment will

earn FSA Time Credits, to be applied toward prerelease custody ( *i.e.,* transfer to a Residential Reentry Center (RRC) or home confinement for service of a portion of the inmate's sentence) or transfer to supervised release ( *i.e.,* early satisfaction of the inmate's term of imprisonment) under 18 U.S.C. 3624(g) (https://www.govinfo.gov/link/uscode/18/3624).

The proposed rule on this subject was published on November 25, 2020 (85 FR 75268 (/citation/85-FR-75268)). The public comment period ended on January 25, 2021. The Bureau received over two hundred and fifty responses to the publication of the proposed rule, but cannot generate a definite number of comments, as a significant portion of responses were from inmates in Bureau facilities and their family members requesting that FSA Time Credits be applied to the terms of imprisonment of particular inmates, rather than specific comments or questions regarding the proposed regulations as published.

Staff at Bureau facilities have been instructed to address specific questions regarding application of FSA Time Credits to particular inmates with those individual inmates, and we encourage those with questions regarding particular inmates to address those questions to staff at facilities where those inmates are housed, or to the regional offices with oversight for those facilities. A list of Bureau of Prisons Regional Offices can be found on the Bureau website: *https://www.bop.gov/about/facilities/offices.jsp?o=4 (https://www.bop.gov/about/facilities/offices.jsp?o=4).*

The Bureau also received a large number of comments on the proposed regulations which repeated certain common themes and issues. We have therefore consolidated the issues raised into representative excerpts from selected commenters, and address these issues below.

Additionally, on October 18, 2021, the Bureau published a document reopening the comment period of the proposed rulemaking until November 17, 2021, to solicit public comment on the limited issue of whether DC Code offenders in Bureau of Prisons custody are eligible to apply Time Credits under 18 U.S.C. 3632(d)(4) (https://www.govinfo.gov/link/uscode/18/3632), as added by the FSA. 86 FR 57612 (/citation/86-FR-57612). We received thirty submissions during the reopened comment period with regard to that issue, which we discuss further below.

*COMMENT: The Bureau's definition of a "day" as one eight-hour-period of a successfully completed EBRR Program or PA is incorrect, unworkable, and/or contrary to congressional intent.*

The FSA provides that "[a] prisoner shall earn 10 days of time credits for every 30 days of successful participation in evidence-based recidivism reduction programming or productive activities." 18 U.S.C. 3632(d)(4)(A)(i) (https://www.govinfo.gov/link/uscode/18/3632). An inmate determined to be at a "minimum or low risk for recidivating" who, "over 2 consecutive assessments, has not increased their risk of recidivism, shall earn an additional 5 days of time credits for every 30 days of successful participation in evidence-based recidivism reduction programming or productive activities." 18 U.S.C. 3632(d)(4)(A)(ii) (https://www.govinfo.gov/link/uscode/18/3632). The statute does not expressly define what constitutes a "day" of successful participation. In the proposed rule, the Bureau defined it as "one eight-hour period of participation in an EBRR Program or PA that an eligible inmate successfully completes."

More than 150 commenters raised concerns with the Bureau's definition. For example, Senator Sheldon Whitehouse (D-RI) and Senator John Cornyn (R-TX) commented as follows:

The proposed rule's definition of a "day" of program participation does not adequately reward engagement with [EBBR programs] and PAs consistent with the First Step Act. . . . Because BOP programs do not run for eight hours per day, the proposed rule would require individuals to attend an EBRR or PA for several calendar days before they earned a full "day" of time credit. . . It was not our intent as drafters of the legislation that BOP define a "day" in this way. Nor did Congress ever consider it. . . . The proposed rule's narrow definition of a "day" does not adequately incentivize program participation and reduce recidivism as intended by the First Step Act.

Congressman Hakeem Jeffries (D-NY) echoed the Senators' sentiments, stating:

[D]efining a day as eight hours of participation does not appear to be a good faith attempt to honor congressional intent. A day of successful participation is clearly a day on which a prisoner has successfully participated in a program or productive activity. BOP[']s definition of [a] day would dramatically reduce the amount of time credits an individual can earn.

*RESPONSE:* After carefully considering the comments received, the Bureau agrees that a change is warranted. The proposed definition of a day of successful participation was inconsistent with the goals of the FSA and would have been logistically burdensome to calculate and administer. The Bureau is thus adopting a simpler FSA Time Credits program award model that will more fully encourage and reward participation in evidence-based recidivism reduction programs and productive activities.

In enacting the FSA, Congress made clear that Time Credits should be broadly applicable to a wide range of inmates for a broad range of activities to maximize their opportunities to reduce recidivism. The proposed definition, however, would have meant that inmates could successfully do everything asked of them as part of their recommended programming for multiple days ( *e.g.,* two hours each day for four days), but be credited for only one day of successful participation.

In addition, the proposed definition would have required Bureau staff to not only track inmate participation in recommended programming, but also break down participation time into individual hours of work, and then aggregate time spent completing certain programming with other time spent completing other programming. This approach would have varied the earning of Time Credits by program factors such as intensity, length, and duration that could have been confusing to inmates, burdensome for staff to administer, and inconsistent with the general goal of awarding Time Credits in a consistent manner to inmates who are participating in the full range of programming ⬜ recommended to them based on the results of their risk and needs assessments.

⬜ Start Printed
Page 2707

The final rule adopts a more straightforward and more administratively manageable approach that is consistent with the FSA's goal of promoting successful participation in EBRR Programs and PAs. For every thirty-day period that an eligible inmate successfully participates in EBRR Programs or PAs recommended based on the inmate's risk and needs assessment, the inmate will earn ten days of FSA Time Credits. If the inmate is determined to be at a minimum or low risk for recidivating and can maintain that risk level for the most recent two consecutive risk and needs assessments, that inmate may earn an additional five days of FSA Time Credits per thirty-day period.

An eligible inmate must successfully participate in programs and activities that the Bureau recommends based on an individualized risk and needs assessment to earn Time Credits. An inmate will not be considered to be successfully participating if that inmate refuses to participate in or otherwise violates conditions, rules, or requirements of EBRR programs or PAs recommended based on the inmate's risk and needs assessment.

However, temporary interruptions in participation that are unrelated to an inmate's refusal to participate or other violation of programming requirements, or that are authorized by the Bureau, such when a recommended program or activity is unavailable or at full enrollment, will not affect the inmate's ability to earn Time Credits.

If an eligible inmate refuses to participate in the recommended program or activity, engages in misconduct that results in removal from the program or activity through placement in restrictive housing, or disrupts or fails to follow the conditions, parameters, or rules of the program or activity, accrual of Time Credits is paused until the inmate complies with programming or completes the disciplinary sanction. This methodology is intended to guide inmates back to the appropriate pro-social goals of programming and act as a deterrent for future misconduct, giving inmates a direct incentive to maintain clear conduct (behavior clear of inmate disciplinary infractions under 28 CFR part 541 (https://www.ecfr.gov/current/title-28/part-541)).

By clarifying the method for awarding Time Credits in this manner to ensure it furthers Congressional intent of the statute, the Bureau hopes to increase the amount of FSA Time Credits that may be awarded to eligible inmates.

COMMENT: FSA Time Credits should be earned for programs successfully completed on or after December 21, 2018, the date of the enactment of the First Step Act, instead of January 15, 2020, as indicated in the proposed rule.

More than 150 commenters raised this issue, including Senator Sheldon Whitehouse (D-RI) and Senator John Cornyn (R-TX), who wrote:

The Act provides that "[a] prisoner may not earn time credits under this paragraph for an evidence-based recidivism reduction program that the prisoner successfully completed . . . prior to the date of enactment of this subchapter." 18 U.S.C. 3632(d)(4)(B) (https://www.govinfo.gov/link/uscode/18/3632). . . . The proposed rule, however, states that an individual may only earn time credits for programs "successfully completed on or after January 15, 2020"—more than a year after the date of enactment. Nor does the proposed rule explain why individuals are not eligible to earn time credits for programs completed between December 21, 2018 and January 15, 2020.

Congressman Hakeem Jeffries (D-NY) also commented on this issue, opining that the regulation's proposed start date for earning time credits of January 15, 2020, "serves no clear purpose and is inconsistent with the text of the First Step Act, which states that credit may not be earned for programs completed prior to the date of enactment of this subchapter, which was December 21, 2018."

RESPONSE: As the commenters correctly note, the FSA explicitly states that Time Credits may not be earned for participation in programming prior to the date of the FSA's enactment. The statute is silent, however, as to the specific date on which inmates should begin to earn Time Credits. Instead, the statute expressly contemplates a phased-in approach and sets specific timelines and benchmarks for implementation.[1] This phased-in approach is appropriate and warranted, given that the FSA has been the most impactful congressional action taken concerning the Bureau of Prisons in recent years, requiring major changes to existing systems and processes, the development of new systems, and changes that apply to approximately 130,000 current inmates.

Under this phased-in approach, the Attorney General was required to develop and release the risk and needs assessment system within 210 days from the date the FSA was signed into law, December 21, 2018. The new risk and needs assessment tool, called the Prisoner Assessment Tool Targeting Estimated Risk and Needs (PATTERN), was subsequently released on July 19, 2019, in accordance with the FSA. Additional modifications of PATTERN occurred after feedback was received from external stakeholders and the FSA-established Independent Review Committee.

The FSA required that as part of the implementation period, within 180 days of the risk and needs assessment system's release date, the Bureau would conduct initial risk and needs assessments for the inmate population and begin expanding the EBRR Programs and PAs necessary to effectively implement the system.[2] The Bureau assigned an initial PATTERN risk level to each inmate by the statutory deadline of January 15, 2020. And, notably, the Bureau implemented the FSA's directive at 18 U.S.C. 3621(h)(2)(A) (https://www.govinfo.gov/link/uscode/18/3621), to assign inmates to EBRR Programs or PAs by January 15, 2022 (two years after the date by which the agency completed risk and needs assessments for all inmates) well before that date.

Because the FSA contemplates a phase-in period during which the risk and needs assessment system could be developed, and because the FSA is silent regarding a specific date when eligible inmates must begin earning Time Credits, the Bureau exercised its discretion and adopted the position in the proposed rule that it would be reasonable for the Bureau to begin allowing inmates eligible under the FSA to earn FSA Time Credits *after* the risk and needs assessment and relevant programming were established, *i.e.,* on January 15, 2020, the date on which initial evaluations under the new risk and needs assessment system were completed. However, in light of the comments submitted, the Bureau acknowledges that because the FSA is silent regarding a specific date when eligible inmates must begin earning Time Credits, yet explicitly prohibits the earning of Time Credits for participation prior to the date of enactment, the statute could also be interpreted to allow for eligible inmates to earn Time Credits as of December 21, 2018, the date of enactment of the FSA.
🗋

☐ Start Printed
Page 2708

The case law on this issue is mixed, but some courts have concluded that this reading is in fact the better one. With regard to participation in programming completed after the date of the FSA's enactment, but before completion of all inmate risk and needs assessments on January 15, 2020, some courts have held that eligible inmates should be awarded FSA Time Credits in addition to the pre-FSA incentives already offered by the Bureau. Courts in the Districts of New Jersey and Oregon have directed the Bureau to award Time Credits under the FSA for the successful completion of programs and activities occurring before January 15, 2020, but on or after December 21, 2018, the FSA's date of enactment. *See, e.g., Cazares* v. *Hendrix,* 20-cv-2019 (D. Or. Nov. 9, 2021); *Goodman* v. *Ortiz,* 2020 WL 5015613, at *6 (D.N.J., Aug. 25, 2020) (holding inmates are currently entitled to FSA Time Credits that have been properly earned); *Hare* v. *Ortiz,* 2021 WL 391280, at *7 (D.N.J. Feb. 4, 2021) (limiting award of Time Credits to those earned for programs completed on or after the date of enactment of the FSA); *Gallo* v. *Ortiz,* Civ. No. 20-16416 (D.N.J., filed Feb. 16, 2021) (District Court required the Bureau to calculate Time Credits based on 2018 date).[3] Awarding Time Credits as of the date of enactment may also be more consistent with the FSA's goals of reducing recidivism through participation in programming and activities, and allowing inmates to work towards early release. From a fairness perspective, the Bureau also acknowledges that an inmate who has been consistently participating in programming, such as working to obtain his or her GED while the FSA was in effect, between December 21, 2018 (the date of the enactment of the FSA), and January 15, 2020 (the date risk and needs assessments were completed on all Bureau inmates), should be rewarded for that effort.

While the Bureau continues to consider the FSA amenable to the interpretation reflected in the proposed rule, it acknowledges that the statute is ambiguous, and in light of the FSA's purposes and fairness considerations, it exercises its discretion to adopt the reading urged by the majority of commenters. Therefore, the Bureau amends this final rule to allow inmates eligible under the First Step Act to receive retroactive Time Credits for programming and activities they participated in starting on December 21, 2018, the date of the FSA's enactment. In determining how to award FSA Time Credits during the period before all individualized risk and needs assessments had been completed, the Bureau faces administrative challenges. Consistent with the phased-in approach contemplated by the FSA, the Bureau did not have mechanisms in place to methodically track participation in EBRRs and PAs until January 15, 2020, because comprehensive uniform tracking codes did not exist. In addition, it was not until that date that the Bureau had completed individualized risk and needs assessments for every inmate—and thus had a basis to conclude that there was an evidence-based reason to assign a particular program to, or recommend particular activities for, an inmate in order to reduce a particular inmate's risk of recidivism. Thus, in many instances, inmates were participating in programs for reasons other than addressing a criminogenic need.

Due to these administrative difficulties, for inmates participating in programming after the date of the FSA's enactment, but before the date that Bureau had completed all risk and needs assessments (December 18, 2018, to January 14, 2020), it is not feasible for the Bureau to connect individual inmate participation in programming to individualized risk and needs assessments, since the risk and needs assessment tool did not exist until well after the date of the FSA's enactment. Instead, for inmate participation in programming during this period of time, the Bureau will exercise its discretion to award FSA Time Credits to inmates otherwise deemed eligible under the First Step Act by applying the same criteria as that applied to inmate participation in authorized EBRR programs or PAs recommended based on a risk and needs assessment after January 2020 to determine the inmate's retroactive Time Credit balance. Eligible inmates will be afforded a presumption of participation for the period between December 21, 2018, and January 14, 2020 and be awarded Time Credits accordingly. Inmates will not receive credit for any period in which they were in a special housing unit, in a designation status outside the institution, temporarily transferred to the custody of another Federal or non-Federal government agency, in mental health/psychiatric holds (either court-ordered mental health/psychiatric evaluations or situations in which mental health or psychiatric evaluation or treatment require an inmate to be designated outside or away from the inmate's "home" facility within the Bureau), or for refusing mandatory programming, as further explained below.

COMMENT: *There are no safeguards in the risk and needs assessment system to prevent racial discrimination or racial disparities.*

Several commenters were concerned about the potential for racial and ethnic biases or disparities in the risk and needs assessment tool used by the Bureau of Prisons.

RESPONSE: The Department of Justice issued the Risk and Needs Assessment System (RNAS) mandated by the First Step Act, known as PATTERN, on July 19, 2019. *See The First Step Act of 2018: Risk and Needs Assessment,* U.S. DEP'T OF JUSTICE: OFFICE OF THE ATTORNEY GENERAL, *https://www.bop.gov/ inmates/fsa/docs/the-first-step-act-of-2018-risk-and-needs-assessment-system.pdf (https://www.bop.gov/inmates/fsa/docs/the-first-step-act-of-2018-risk-and-needs-assessment-system.pdf)* (July 2019). The Department's release of PATTERN was followed by a comment period during which the Department received approximately 200 comments and statements and held two listening

sessions. On November 19, 2019, the Attorney General met with the Independent Review Committee (IRC) created by Section 107 of the FSA to discuss proposed changes to PATTERN, as required by 18 U.S.C. 3632 (https://www.govinfo.gov/link/uscode/18/3632).

The Attorney General then announced enhancements to PATTERN in a document entitled *The First Step Act of 2018: Risk and Needs Assessment System—UPDATE, https://www.bop.gov/inmates/fsa/docs/the-first-step-act-of-2018-risk-and-needs-assessment-system-updated.pdf (https://www.bop.gov/inmates/fsa/docs/the-first-step-act-of-2018-risk-and-needs-assessment-system-updated.pdf)* (January 2020) (2020 Update). In this 2020 Update, and in response to concerns arising from potential racial disparities, the Department instituted several recommended changes to the tool. Later, in 2021, the Department also implemented a more standardized ☐ process for inputting scores into the risk and needs system, and the Bureau will continue to ensure that necessary precautions are taken to ensure consistent, objective application for all inmates in accordance with the published schema.

☐ Start Printed
Page 2709

The *2021 Annual Review and Revalidation of the First Step Act Risk Assessment Tool* report confirmed the predictive and dynamic validity of PATTERN, but expressed the concern that differences in race and ethnicity might affect predictions of risk for recidivism. The Justice Department takes seriously its responsibility under the First Step Act to annually "review, validate, and release publicly on the Department of Justice website the risk and needs assessment system," and ". . . to identify any unwarranted disparities, including disparities among similarly classified prisoners of different demographic groups . . ." 18 U.S.C. 3631(b)(4)(E) (https://www.govinfo.gov/link/uscode/18/3631). The Department will continue to meet this mandate, to rigorously evaluate any risk assessment tool, including through the use of outside experts, and to take all steps possible to address and mitigate against racial bias or other disparities.

As part of that compliance, the Department will publish annually (1) for each disqualifying offense, data on how many individuals from each racial and/or ethnic group were ineligible to earn Time Credits; (2) for each disqualifying prior federal conviction, data on how many individuals from each racial and/or ethnic group were ineligible to earn Time Credits; (3) for all other disqualifying prior convictions, data on how many individuals from each racial and/or ethnic group were ineligible to earn Time Credits; (4) data on how many individuals from each racial and/or ethnic group were eligible to earn Time Credits; and (5) how many individuals from each racial and/or ethnic received risk and needs assessment score classifications of "high," "medium," "low," and "minimum" based on their most recent assessment.

*COMMENT: The Bureau does not have the resources to implement the FSA Time Credits program appropriately.*

Several commenters were concerned about the Bureau's ability to implement the FSA Time Credits program. One commenter, for example, stated that "the average course that is offered by BOP is not listed on the list for reentry courses, some of which are college/correspondence courses that inmates have to pay for out of pocket. As for the courses that are listed, they are not even offered at this time because inmates are the teachers of them, and COVID does not allow inmates to teach them at this time. Many inmates are returning home now, not having had any reentry courses—not to their own fault." Other commenters mentioned long waitlists and other scarcity of resource issues.

*RESPONSE:* The Bureau recognizes the significant impact that the FSA will have on inmate programming, and notes that additional appropriated funding has been directed toward FSA implementation. These additional resources will be used to add to existing programs and meet the FSA's direction that the Bureau

encourage and increase inmate programming participation.

Before the enactment of the FSA, the Bureau already offered a wide variety of programs and activities designed to prepare inmates for release, educate them, and provide them with substance abuse disorder and mental health treatment. The Bureau has always endeavored to focus on increasing the breadth and depth of its programming for inmates and build greater capacity for inmate participation in programming, and the FSA provides further statutory support for that mission. To that end, the Bureau has asked, and will continue to ask, Congress to authorize funding and staffing for those purposes, and will endeavor to fill staff positions as necessary to increase and enhance inmate programming.

In *The First Step Act of 2018: Risk and Needs Assessment System—UPDATE,* U.S. DEP'T OF JUSTICE: OFFICE OF THE ATTORNEY GENERAL, *https://www.bop.gov/inmates/fsa/docs/the-first-step-act-of-2018-risk-and-needs-assessment-system-updated.pdf (https://www.bop.gov/inmates/fsa/docs/the-first-step-act-of-2018-risk-and-needs-assessment-system-updated.pdf)* (January 2020) (2020 Update), the Department indicated that it had received feedback expressing concerns about the Bureau's programming capacity. *Id.* at 18. The issue raised by this feedback to the Department is substantially similar to concerns raised by the commenters on the Bureau's proposed rule.

In response to the feedback discussed in this 2020 Update, the Department described the waitlist process for inmate programming, indicating that that process is meant to ensure that inmates are "enrolled in needed courses at the appropriate times in their incarceration," and that "case management and programming staff monitor these lists based on inmate need and release date/plans, to ensure relevant programs are completed in appropriate timeframes." *Id.* The Department also described the ongoing expansion of Federal Prison Industries and the Resolve Program (providing trauma treatment). However, the Department also noted:

As part of the FSA implementation, the BOP is assigning codes to approved evidence-based recidivism reduction programs and productive activities to enable tracking and monitoring of their capacity and use. BOP will also begin assigning inmates to specific programs to address identified needs, which will allow it to further examine inmate interest and program capacity. Based upon these changes, BOP can expand or contract capacity consistent with the inmate needs and interests.

*Id.* The Department also noted in the 2020 Update that the Bureau had "already begun expanding programs and hiring staff to deliver" further necessary programming, and that although the FSA, issued in 2018, had "not come with appropriated funds in [fiscal year] FY 2019 . . . BOP had taken the initiative to adjust funding within its budget to cover a variety of targeted FSA activities." Further, for FY 2020, approximately $116 million was authorized to allow the Bureau to expand evidence-based reentry programs, capacity for prerelease custody, medication-assisted treatment (MAT) for opioid use disorder nationwide, information technology services for inmates, and evaluation of programs and services. *Id.* at 21-22.

Additionally, in the 2020 Update, the Department noted that to facilitate implementation of the FSA, the Bureau had increased staffing at female institutions and enhanced male and female trauma treatment and vocational training offerings. The Bureau also implemented a variety of hiring strategies to address staffing shortfalls, and continues to do so. *Id.* at 24. Therefore, while the Bureau recognizes that resources have been strained, future funding allotments will enhance the Bureau's course offerings and serve to bolster the Bureau's resources, improving its ability to carry out the FSA Time Credits program across all Bureau facilities.

*COMMENT: FSA Time Credits should be awarded for participation in UNICOR, online or correspondence college courses, religious services, more time for RDAP, and other programs and activities.*

Several commenters suggested that the list of EBRR Programs and PAs should be expanded to include participation in, or a greater amount of Time Credits allowable for participation in, UNICOR and prison jobs, online or correspondence courses (including college courses), religious services, the Residential Drug Abuse Treatment Program (RDAP), and a variety of other programs, courses, and activities. ☐

☐ Start Printed Page 2710

For instance, one commenter indicated that while the requirement to successfully complete a program before earning Time Credits "may make sense for educational classes, certificate-based programs, or fixed length productive activities, it should not apply to prison jobs that would require ongoing accumulation of Time Credits. A prison job is not a `program to complete,' has no set duration, and its success is based on continued employment and supervisor evaluations."

Another commenter suggested that those "participating in the Residential Drug[] Abuse Program (RDAP), should receive (16) program hours per day, 2 eight-hour program days for 1 proposed day, . . . [because] RDAP participants `live' in a therapeutic community."

Additionally, Senator Sheldon Whitehouse (D-RI) and Senator John Cornyn (R-TX) commented as follows:

As BOP finalizes and implements its proposed rule, it should ensure that individuals are assigned to categories of programs that meet their needs, rather than specific programs, to allow for maximum participation in credit-earning EBRRs and PAs. . . . Each program at a facility should be appropriately categorized, including faith-based programs. Such flexibility will ensure that individuals can freely choose to participate or not participate in faith-based options. It is also critical to allow for greater program access as BOP expands its offerings, as some programs have limited capacity or may not be offered at particular facilities.

*RESPONSE:* The Bureau agrees with these commenters, and has structured its programs and work assignments to promote participation and flexibility. New funding allotments will enhance the Bureau's course offerings, largely by permitting it to increase capacity through hiring additional staff, and will also serve to bolster the Bureau's resources, thereby improving its ability to carry out the FSA Time Credits program. The Bureau began to enhance programming immediately after the FSA's enactment, using then-current appropriations from FY 2019 not allotted specifically for FSA implementation, and continued to grow its programming offerings with budget allotments as authorized from FY 2020 appropriations.

In *The Attorney General's First Step Act Section 3634 Annual Report,* U.S. DEP'T OF JUSTICE: OFFICE OF THE ATTORNEY GENERAL, *https://www.bop.gov/inmates/fsa/docs/20201221_fsa_section_3634_report.pdf (https://www.bop.gov/inmates/fsa/docs/20201221_fsa_section_3634_report.pdf)* (December 2020) (2020 Annual Report), the Bureau established a review process to consider externally submitted programs for potential inclusion on the approved EBRR Program/PA list. *Id.* at 17. The Bureau currently engages in partnerships with external organizations to recruit community volunteers to assist with inmate reentry and educational programs. Consistent with the goal of supporting and expanding volunteer activities at all institutions, on June 25, 2019, the Bureau provided guidance to all Wardens about the importance and use of partnerships under the FSA. Specifically, the Assistant Directors for the Office of General Counsel and Reentry Services Divisions issued guidance on collaboration with outside organizations pursuant to the FSA. This memorandum provided information on the FSA's statutory requirements, the Bureau process for establishing partnerships, equitable treatment of similar organizations, and tracking of partnerships.

On September 19, 2019, voluntary partnerships were in place at all 122 Bureau institutions. During FY 2019, 5,939 individuals volunteered 110,489 hours at various institutions. During FY 2020 (as of September 10, 2020), 5,978 volunteers and contractors had provided 157,752 hours at various institutions. The increase in volunteer hours can, in part, be attributed to staff efforts to increase partnerships pre-COVID-19, and changes made to the Bureau volunteer tracking system. *Id.* at 37.

In 2020, the Bureau created unique identifier codes for every Bureau program. These codes allow Bureau to track inmates' program enrollment, participation, and completion. This information can then be compared to needs assessment information and used as a method for assessing capacity. Unfortunately, because of the global pandemic, the Bureau has not been able to program as it would under normal conditions.

The Bureau assesses 12 broad need areas plus dyslexia, and programs are matched to each of these needs. As normal operations resume, the Bureau will be able to accurately track whether inmates sign up for the programs that match their needs, and whether the programs are offered with enough capacity that inmates are able to complete them at the appropriate times during their sentences. While the Bureau's current list of over 70 EBRR Programs and PAs addresses most areas of need, some improvements have been made even during the pandemic. For example, the Bureau created better quality and more standardized materials that provide more consistent program delivery. Additionally, a more intensive program addressing criminal cognition is in development to account for this highly prevalent need in Bureau facilities. *Id.* at 19-20.

Also, several programs and activities mentioned by the commenters as items that should be included in the list of approved programs are, in fact, already on the list. *The First Step Act Approved Programs Guide,* available on the Bureau's website at *https://www.bop.gov/inmates/fsa/docs/2021_fsa_program_guide.pdf (https://www.bop.gov/inmates/fsa/docs/2021_fsa_program_guide.pdf)* (Programs Guide), contains a program description, institution locations, needs addressed by each program offered, and the department responsible for program delivery ( *e.g.*, Education, Psychology).

The Programs Guide indicates that offered programs and activities "will vary based on the needs of the sentenced population" at a given location. This helps to explain, in part, why some programs and activities may not be available at all facilities. However, as the Bureau continues to expand its offerings, the Programs Guide continues to expand, and will be updated annually.

With regard to several programs and activities specifically mentioned by commenters:

*UNICOR:* Employment in Federal Prison Industries (FPI, also known by its trade name, UNICOR) is included in the Programs Guide as an EBRR Program.

*RDAP:* The Residential Drug Abuse Treatment Program (RDAP), is included in the Program Guide as an EBRR Program.

*Online or correspondence college courses:* The Programs Guide includes Post-Secondary Education programming, and explains that "[c]ollege level classes are provided by credentialed instructors from the community who deliver coursework leading to the Associates or Bachelors degree," and that "[s]pecific prerequisites for each program are determined by the school providing the service." *See Programs Guide* at 23. This program, delivered by Education staff or appropriately credentialed contractors, allows for online or correspondence college courses, as authorized and credentialed by the Bureau's Education staff.

*Religious services and programming:* The Programs Guide describes several faith-based programs and activities currently available at all Bureau facilities, including the Threshold Program, a faith-based reentry program ( *id.* at 32), and Embracing Interfaith Cooperation, a PA which fosters interfaith dialogue and understanding to counter religious discrimination and extremism ( *id.* at 36).

Also, the Bureau's longstanding Life Connections Program (LCP), a ⬚ residential, multi-faith-based reentry program open to inmates of all religious traditions and those with no faith affiliation, uses contract partners to provide religious services, while community volunteers serve as mentors to inmate participants. This program is available at six Bureau facilities. *See* 2020 Annual Report, *supra,* at 37-38.

☐ Start Printed Page 2711

As the Bureau's FSA implementation budget appropriations increase and necessary COVID-19 pandemic-related health and safety restrictions ease, the Bureau will continue its efforts to expand EBRR programming and PA offerings available at Bureau facilities for eligible inmates. Furthermore, as noted above, the Bureau has changed the proposed regulation to a more inclusive model, whereby FSA Time Credits may be earned if an eligible inmate is successfully participating in EBRR Programs and PAs recommended based upon his or her risk and needs assessment. Also, inmates will not be penalized if specifically recommended EBRR Programs or PAs are unavailable to them or at full enrollment at their facilities. As the Bureau continues to evaluate these and other types of programs and activities, the list of EBRR Programs and PAs for which inmates may earn FSA Time Credits will likewise increase.

*COMMENT: FSA Time Credits should be earned for successful participation, not only for successful completion.*

Many commenters opined that FSA Time Credits should be awarded on an ongoing basis, during *participation* in EBRR programming and PAs, instead of after successful *completion* of an EBRR Program or PA. One commenter wrote that

[b]y focusing only on completion, BOP diminishes the value of participation and weakens the incentive structure Congress enacted. Indeed, there are myriad situations where people would successfully participate in an approved program and—through no fault of their own—be prevented from, or delayed in, completing it. Transfers, program resource and staffing limitations, and facility movement restrictions all impact program completion, as do length of sentence, program availability, and waitlists. Individuals have no control over completion if, for example, their facility is locked down, or if programs are indefinitely suspended due to a pandemic. Congress created the earned time credit system to encourage personal responsibility. BOP's all-or-nothing rule that fails to acknowledge participation is inconsistent with this intent. BOP should revise the proposed rule to allow individuals who successfully participate in programming to earn time credits.

*RESPONSE:* The Bureau agrees with these comments. As indicated previously, the Bureau is altering and expanding its method for awarding Time Credits.

The concern of the commenters regarding participation in programming echoes the Bureau's longstanding policy of encouraging inmate reentry programming and productive activities throughout each inmate's incarceration, which is consistent with the FSA's goal of attaining maximum recidivism reduction. The Bureau will continue to emphasize the need for full and successful participation in EBRR programs and PAs, as recommended for each inmate, to achieve the maximum award of FSA Time Credits to the maximum number of eligible inmates.

Toward that end, the Bureau has developed the simpler model which it now adopts for the FSA Time Credits program. Under this model, each eligible inmate earns Time Credits while participating in recommended EBRR Programs and PAs. Time Credits for successful participation are awarded at the end of each thirty-day period. By altering the scheme for awarding Time Credits in this manner, the Bureau hopes to increase the amount of FSA Time Credits that may be awarded to the maximum number of eligible inmates. Inmates must participate in all programs and activities that the Bureau recommends based on an individualized risk and needs assessment to be considered to have successfully participated in recommended EBRR Programs and PAs for purposes of earning Time Credits.

It is important to note, however, that temporary interruptions in participation that are unrelated to an inmate's refusal or other violation of programming requirements, such as the unavailability of a recommended program or activity or its full enrollment, or interruptions authorized by the Bureau, will not affect the inmate's ability to earn Time Credits. An inmate's ability to earn FSA Time Credits will be affected if the inmate refuses to participate in the recommended programming or productive activity, engages in misconduct that results in removal from the program or activity through placement in restrictive housing, or disrupts or fails to follow the conditions, parameters, or rules of the activity. In the event that the inmate is found to have committed any of these violations, accrual of Time Credits is paused until the inmate complies with programming conditions, parameters, or rules, or completes the disciplinary sanction.

For, example, the Bureau may permit an inmate to continue earning FSA Time Credit if programming is briefly interrupted due to an instructor's illness, which results in the instructor canceling class for the day. Another possible example might be a brief interruption caused by an inmate requiring to be absent from programming for a day or two due to illness or medical treatment. In such circumstances, the Bureau may review whether or not the illness or medical treatment is attributable to factors over which the inmate may exercise control (possible drug overdose, injuries sustained while fighting, etc.), whether the conduct is a disciplinary offense, or whether it is excusable behavior and therefore may be authorized. The Bureau will strive to reach an equitable result when calculating time in program participation and circumstances both beyond and within the inmate's control.

Accordingly, unless the inmate formally declines recommended programming addressing his or her unique needs, or is not participating in any activities, the assumption is that the eligible inmates will be earning Time Credits and fully participating in recommended programming. The regulation indicates that accrual of Time Credits may be suspended in certain situations when the inmate is unable to participate in recommended programming, including, but not limited to, situations such as:

- Placement in a Special Housing Unit;

• Designation status outside the institution ( *e.g.,* for extended medical placement in a hospital or outside institution, court appearances, an escorted trip, a furlough, etc.);

• Temporary transfer to the custody of another federal or non-federal government agency (e. *g.,* on state or federal writ, transfer to state custody for service of sentence, etc.);

- Placement in mental health/psychiatric holds; or
- "Opting out" (choosing not to participate in the EBRR programs or PAs that the Bureau has recommended based on the inmate's individualized risk and needs assessment).

Inmates who decline to participate in a recommended voluntary EBRR or PA ( *i.e.,* inmates that "opt out") will not be considered to be refusing a program assignment for the purposes of disciplinary prohibited act code violations, but will merely be excluded from benefits or privileges of FSA Time Credit Program participation. For example, declining to take a recommended anger management course will prevent an inmate from earning FSA Time Credits, but will not in itself constitute a disciplinary prohibited act code violation. Inmates that refuse a formal assignment, ☐ however, will also be held responsible for any attendant disciplinary prohibited act code violations, *e.g.,* failing to report to institution work detail.[4]

☐ Start Printed Page 2712

*COMMENT: FSA Time Credits should be applied to an inmate's transfer to supervised release (to shorten a term of imprisonment).*

Some commenters indicated that they were concerned that Time Credits would not, in fact, be applied to transfer to supervised release at all, but instead might only be applied to prerelease custody, noting that the proposed rule "does not address the procedures for determining whether an individual inmate will have FSA Time Credits applied toward prerelease custody, early transfer to supervised release, a combination of both, or neither; this proposed rule only addresses the procedures for earning, awarding, loss, and restoration of FSA Time Credits."

*RESPONSE:* As stated, under the FSA, an eligible inmate who successfully participates in an EBRR Program or PA recommended by staff based on the inmate's risk and needs assessment may earn FSA Time Credits to apply toward prerelease custody or transfer to supervised release. Eligible inmates may earn 10 days of Time Credits (and, if maintaining a low or minimum risk status, an additional 5 days of Time Credits) for every 30-day period of successful participation in EBRR Programs or PAs.

However, under the FSA (18 U.S.C. 3624(g) (https://www.govinfo.gov/link/uscode/18/3624)), even if earned, Time Credits may not be applied to prerelease custody until:

- The amount of earned Time Credits is equal to the remainder of the inmate's imposed term of imprisonment;
- The inmate has demonstrated a reduced risk of recidivism or maintained a minimum or low recidivism risk during his or her term of imprisonment;

• The remainder of the inmate's imposed term of imprisonment has been computed under applicable law ( *e.g.,* Good Conduct Time Credit under 28 CFR part 523 (https://www.ecfr.gov/current/title-28/part-523) has been applied, eligibility for early release consideration under Residential Drug Abuse Treatment Program regulations in 28 CFR part 550 (https://www.ecfr.gov/current/title-28/part-550) has been evaluated, etc.); and

- The inmate has been determined to be at a minimum or low risk of recidivating based on his or her last two assessments, or has had a petition to be transferred to prerelease custody approved by the warden.

Similar requirements exist under the FSA for application of earned Time Credits to transfer to supervised release. Time Credits may not be applied to transfer to supervised release under 18 U.S.C. 3624(g) (https://www.govinfo.gov/link/uscode/18/3624) unless:

- The amount of earned Time Credits is equal to the remainder of the inmate's imposed term of imprisonment;
- The inmate's sentence includes a period of supervised release to be served after his or her term of imprisonment;

■ The inmate's latest risk and needs assessment shows that he or she is at a minimum or low risk of recidivating; and

• The application of Time Credits would not result in starting the period of supervised release more than 12 months before he or she would otherwise be eligible to do so ( *i.e.,* any amount of earned Time Credits in excess of 12 months would be applied to prerelease custody).

*See* Nathan James, U.S. Congressional Research Service, The First Step Act of 2018: An Overview (2019), at 5-6.

The Bureau assures commenters that FSA Time Credits will be applied to early transfer to supervised release, as authorized by the FSA in 18 U.S.C. 3632(d)(4)(C) (https://www.govinfo.gov/link/uscode/18/3632) and 18 U.S.C. 3624(g) (https://www.govinfo.gov/link/uscode/18/3624). *See* 2020 Annual Report at 39-44. The Bureau intends to adhere to the parameters of the FSA to permit application of Time Credits toward transfer to supervised release pending development of policy, in individual cases as appropriate.

*COMMENT: Earning FSA Time Credits should continue in Residential Reentry Centers and/or while in home confinement.*

Many commenters raised an issue that was articulated by Senator Sheldon Whitehouse (D-RI) and Senator John Cornyn (R-TX) as follows:

The proposed rule also provides that "FSA Time Credits can only be earned while an inmate is in a Bureau facility, and will not be earned if an inmate is in a Residential Reentry Center or on home confinement." The proposed rule does not cite to any authority for this restriction, and this interpretation is not consistent with the goals of the First Step Act.

Allowing individuals to earn time credits while in RRCs is authorized by the First Step Act. The Act provides that "[t]ime credits earned . . . by prisoners who successfully participate in recidivism reduction programs or productive activities shall be applied toward time in prerelease custody or supervised release." It defines "prisoner" as "a person who has been sentenced to a term of imprisonment pursuant to a conviction for a Federal criminal offense, or a person in the custody of the Bureau of Prisons."

Because "[p]re-release inmates at an RRC remain in Federal custody while serving a sentence imposed by a U.S. District Court or DC Superior Court," they are "prisoners" for the purposes of the First Step Act. Nor does the First Step Act distinguish between "prisoners" who are serving their sentence in a BOP institution, in an RRC, or on home confinement in describing the time credit program. By its own terms, the statute allows BOP to award time credits to individuals incarcerated in an RRC toward time in supervised release.

Allowing individuals incarcerated in an RRC to earn time credits by participating in EBRRs would further the purposes of the First Step Act. RRCs offer substance abuse treatment and other programs similar to those offered in BOP institutions. There is no reason to believe that a program offered in an RRC will reduce recidivism any less than one offered to an individual in prison. In fact, such programs may be more effective, as individuals are close to release from custody and can begin putting lessons learned into practice as they transition home. BOP should revise the proposed rule to allow individuals to earn time credits while in an RRC.

Congressman Hakeem Jeffries (D-NY) also stated, "I see no reason to make individuals in Residential Reentry Centers (RRCs) or in home confinement ineligible to earn time credits. . . . Congress could have used a narrower definition or explicitly excluded certain categories of individuals based on where they serve their sentence, but it chose not to do so."

*RESPONSE:* After carefully considering the comments received, the Bureau agrees that inmates in prerelease custody—whether in a residential reentry center (RRC) or on home confinement—are eligible to earn FSA Time Credits under 18 U.S.C. 3632(d)(4)(A) (https://www.govinfo.gov/link/uscode/18/3632), which they could presumably apply, under 18 U.S.C. 3632(d)(4)(C) (https://www.govinfo.gov/link/uscode/18/3632), toward transfer to supervised release.

The practical effect of allowing eligible inmates to keep earning Time Credits while in prelease custody (RRCs) will likely be limited, however, for several reasons. First, the Bureau intends to transfer eligible inmates who satisfy the criteria in 3624(g) to supervised release to the extent practicable, rather than to prelease custody. The Bureau therefore anticipates that the total population of eligible inmates in RRCs or home confinement will be small.

Second, as a practical matter, programming and services for inmates in RRCs or home confinement will often be provided off-site or by a third-party provider, which makes tracking successful participation more difficult. For example, community-based substance use treatment programs referred to by the Senators in their ☐ comments are not provided on-site at RRCs, but rather on an outpatient basis. The Bureau uses a comprehensive inmate information tracking system that is only accessible to Bureau staff. The Bureau's inmate information tracking system is not accessible to RRC staff, and therefore cannot track inmate programming activity when inmates are no longer in the custody of the Bureau of Prisons.

☐ Start Printed Page 2713

Third, unlike a prison facility, which is a self-contained unit under the Bureau's control and supervision that can provide Bureau-authorized, comparable, and approved programming to all housed inmates, the breadth of programming available at or through different RRCs, or in the communities where an inmate may be place in home confinement, could vary significantly and may not correspond directly to recommendations based on inmates' most recent risk and needs assessments.

Given these variables, the Bureau will work on a case-by-case basis with eligible inmates in RRCs to identify appropriate available programming for them to earn FSA Time Credits, and will determine how to best track participation as part of the Bureau's commitment to ensure the maximum number of FSA Time Credits may be awarded to the maximum number of eligible inmates. The Bureau will issue guidance on this topic to ensure consistency in implementation.

*COMMENT: All inmates should be eligible for FSA Time Credits without exclusions.*

Several commenters recommended that, as a general matter, any inmate willing to participate in the FSA Time Credit program should be eligible for FSA Time Credits. A few individual commenters suggested more specifically that inmates convicted of particular offenses (as described above) should be removed from the category of "ineligible prisoners," as described in 18 U.S.C. 3632(d)(4)(D) (https://www.govinfo.gov/link/uscode/18/3632), and should be permitted to earn FSA Time Credits for application toward prerelease custody or transfer to supervised release.

*RESPONSE:* As noted, 18 U.S.C. 3632(d)(4)(D) (https://www.govinfo.gov/link/uscode/18/3632) describes inmates that are "ineligible to receive time credits" under Subchapter D (the Risk and Needs Assessment System) if serving a term of imprisonment for conviction under any of the provisions listed therein. It is outside the Bureau's authority to alter the exclusions as stated in the FSA. Some commenters suggested that "non-violent" offenses be removed from the ineligibility exclusions, but did not specify which offenses listed might be considered "non-violent" or otherwise define that term. Regardless, the statutory exclusions may only be amended by Congress.

*Specific offenses:* The FSA enumerates 68 offenses for which inmates who are serving terms of imprisonment are ineligible. Commenters raised several specific offenses. We note that under the FSA's list of 68 enumerated offenses, the following are included as ones for which inmates are ineligible if they are serving a term of imprisonment upon conviction:

• 18 U.S.C. 2250 (https://www.govinfo.gov/link/uscode/18/2250), relating to failure to register as a sex offender ( *see* 18 U.S.C. 3632(d)(4)(D) (https://www.govinfo.gov/link/uscode/18/3632)(xxxviii));

• 18 U.S.C. 2251 (https://www.govinfo.gov/link/uscode/18/2251), relating to the sexual exploitation of children ( *see* 18 U.S.C. 3632(d)(4)(D)(xxxix) (https://www.govinfo.gov/link/uscode/18/3632));

• 18 U.S.C. 2251A (https://www.govinfo.gov/link/uscode/18/2251A), relating to the selling or buying of children ( *see* 18 U.S.C. 3632(d)(4)(D)(xl) (https://www.govinfo.gov/link/uscode/18/3632));

• 18 U.S.C. 2252 (https://www.govinfo.gov/link/uscode/18/2252), relating to certain activities concerning material involving the sexual exploitation of minors ( *see* 18 U.S.C. 3632(d)(4)(D)(xli) (https://www.govinfo.gov/link/uscode/18/3632));

• 18 U.S.C. 2252A (https://www.govinfo.gov/link/uscode/18/2252A), relating to certain activities involving material constituting or containing child pornography ( *see* 18 U.S.C. 3632(d)(4)(D)(xlii) (https://www.govinfo.gov/link/uscode/18/3632));

• 18 U.S.C. 2260 (https://www.govinfo.gov/link/uscode/18/2260), relating to the production of sexually explicit depictions of a minor for importation into the United States ( *see* 18 U.S.C. 3634(d)(4)(D)(xliii) (https://www.govinfo.gov/link/uscode/18/3634)).

*Prior convictions:* As stated in the preamble to the proposed rule, an inmate cannot earn FSA Time Credits if he or she has a disqualifying prior conviction as specified in 18 U.S.C. 3632(d)(4)(D) (https://www.govinfo.gov/link/uscode/18/3632). In the interest of clarifying the statement in the proposed rule, a "disqualifying prior conviction" would render an inmate ineligible to earn Time Credits under 18 U.S.C. 3632(d)(4)(D)(li) (https://www.govinfo.gov/link/uscode/18/3632) if the inmate:

1. Had a *prior conviction* for which he or she served a term of imprisonment of more than 1 year, for a Federal or State offense, by whatever designation and wherever committed, consisting of the following:

■ Murder (as described in 18 U.S.C. 1111 (https://www.govinfo.gov/link/uscode/18/1111)),

■ voluntary manslaughter (as described in 18 U.S.C. 1112 (https://www.govinfo.gov/link/uscode/18/1112)),

■ assault with intent to commit murder (as described in 18 U.S.C. 113(a) (https://www.govinfo.gov/link/uscode/18/113)),

- aggravated sexual abuse and sexual abuse (as described in 18 U.S.C. 2241 (https://www.govinfo.gov/link/uscode/18/2241) and 2242 (https://www.govinfo.gov/link/uscode/18/2242)),

- abusive sexual contact (as described in 18 U.S.C. 2244(a)(1) (https://www.govinfo.gov/link/uscode/18/2244) and (a)(2) (https://www.govinfo.gov/link/uscode/18/2244)),

- kidnapping (as described in 18 U.S.C. chapter 55),

- carjacking (as described in 18 U.S.C. 2119 (https://www.govinfo.gov/link/uscode/18/2119)),

- arson (as described in 18 U.S.C. 844(f)(3) (https://www.govinfo.gov/link/uscode/18/844), (h), or (i)), or

- terrorism (as described in 18 U.S.C. chapter 113B);

*AND*

2. Is currently serving a term of imprisonment of more than 1 year for an offense described in 18 U.S.C. 3559(c)(2)(F) (https://www.govinfo.gov/link/uscode/18/3559), *i.e.,* a "serious violent felony," which means either—

(i) a Federal or State offense, by whatever designation and wherever committed, consisting of the following:

- Murder (as described in 18 U.S.C. 1111 (https://www.govinfo.gov/link/uscode/18/1111));

- manslaughter other than involuntary manslaughter (as described in 18 U.S.C. 1112 (https://www.govinfo.gov/link/uscode/18/1112));

- assault with intent to commit murder (as described in 18 U.S.C. 113(a) (https://www.govinfo.gov/link/uscode/18/113));

- assault with intent to commit rape (as described in 18 U.S.C. 3559(c)(2)(A) (https://www.govinfo.gov/link/uscode/18/3559));

- aggravated sexual abuse and sexual abuse (as described in 18 U.S.C. 2241 (https://www.govinfo.gov/link/uscode/18/2241) and 2242 (https://www.govinfo.gov/link/uscode/18/2242));

- abusive sexual contact (as described in 18 U.S.C. 2244(a)(1) (https://www.govinfo.gov/link/uscode/18/2244) and (a)(2) (https://www.govinfo.gov/link/uscode/18/2244));

- kidnapping (as described in 18 U.S.C. 3559(c)(2)(E) (https://www.govinfo.gov/link/uscode/18/3559));

- aircraft piracy (as described in 49 U.S.C. 46502 (https://www.govinfo.gov/link/uscode/49/46502));

- robbery (as described in 18 U.S.C. 2111 (https://www.govinfo.gov/link/uscode/18/2111), 2113 (https://www.govinfo.gov/link/uscode/18/2113), or 2118 (https://www.govinfo.gov/link/uscode/18/2118));

- carjacking (as described in 18 U.S.C. 2119 (https://www.govinfo.gov/link/uscode/18/2119));

- extortion (as described in 18 U.S.C. 3559(c)(2)(C) (https://www.govinfo.gov/link/uscode/18/3559));

- arson (as described in 18 U.S.C. 3559(c)(2)(B) (https://www.govinfo.gov/link/uscode/18/3559));

- firearms use (as described in 18 U.S.C. 3559(c)(2)(D) (https://www.govinfo.gov/link/uscode/18/3559));

- firearms possession (as described in 18 U.S.C. 924(c) (https://www.govinfo.gov/link/uscode/18/924));

- or attempt, conspiracy, or solicitation to commit any of the above offenses;

*OR*

(ii) any other offense punishable by a maximum term of imprisonment of 10 years or more—

- that has as an element the use, attempted use, or threatened use of physical force against the person of another or

- that, by its nature, involves a substantial risk that physical force against the person of another may be used in the course of committing the offense.

The Bureau is cognizant of the strict categorical analysis required by the Supreme Court in adjudicating whether an offense meets the elements or residual clause of 18 U.S.C. 3559 (https://www.govinfo.gov/link/uscode/18/3559). As such, the Bureau after consultation with the Department of Justice will ensure that its facilities receive updated information as to which federal and state offenses qualify or are the subject ☐ of litigation and that inmate records are updated to ensure maximum participation in credit-earning EBRRs.

☐ Start Printed Page 2714

*Deportable inmates:* As the FSA also indicates in 18 U.S.C. 3632(d)(4)(E) (https://www.govinfo.gov/link/uscode/18/3632), an inmate who is subject to a final order of removal under immigration laws as defined in 8 U.S.C. 1101(a)(17) (https://www.govinfo.gov/link/uscode/8/1101) may not have FSA Time Credits applied toward prerelease custody or early transfer to supervised release under 18 U.S.C. 3624(g) (https://www.govinfo.gov/link/uscode/18/3624).

Although the Bureau does not have the authority to award FSA Time Credits to inmates who are ineligible under the FSA, such inmates may still earn other benefits for successfully participating in the many other types of programming offered by the Bureau. Inmates ineligible for earning or applying FSA Time Credits may still receive incentives such as increased privileges (commissary, visiting, and telephone) for participation in EBRR Programs.

*COMMENT: Forfeiture penalties for earned Time Credits are too severe.*

Many commenters stated that the proposal to amend the Bureau's regulations on inmate discipline in 28 CFR part 541 (https://www.ecfr.gov/current/title-28/part-541) to include forfeiture of FSA Time Credits as a disciplinary sanction was too severe. One commenter stated that:

The forfeiture rates would be too harsh on their own, but even more punitive when combined with other negative consequences for violations, including limits on future earning and use of time credits and would be disproportionately severe across all levels of prohibited acts... Moreover, forfeiture of earned time credits is not the only consequence an individual would suffer as the result of a prison infraction. An infraction could also negatively affect an individual's ability to earn and use time credits in the future by raising his risk score. . .

Another commenter stated that

The proposed rule provides that to restore credits from prison rule violations, an individual must first have "[c]lear conduct for at least four consecutive risk and needs assessments.". . . It could take at least 4 years to complete "at least four consecutive risk and needs assessments." Yet BOP provides no justification for requiring clear conduct for this long. Indeed, requiring an individual to remain infraction-free for at least 4 years is inconsistent with PATTERN. Under PATTERN, individuals who are infraction-free for 12 months or more receive no points related to the recency of an infraction. If PATTERN indicates those with infractions older than 12 months are no more risky than those with infractions older than 4 years, it is difficult to understand what justification BOP would have to require "clear conduct" for what could be at least 4 years.

*RESPONSE:* The Bureau agrees with these commenters, and has adjusted the proposed penalties related to FSA Time Credits accordingly. As stated in the proposed rule, FSA Time Credits may be lost through inmate discipline procedures described in 28 CFR part 541 (https://www.ecfr.gov/current/title-28/part-541) only if an inmate violates the requirements or rules of an EBRR Program or PA. The FSA authorizes the Bureau to develop procedures for the reduction of FSA Time Credits for inmates under these circumstances. *See* 18 U.S.C. 3632(e) (https://www.govinfo.gov/link/uscode/18/3632). Opting out of a program will not result in the forfeiture of credits, unless failure to complete the program itself constitutes an infraction ( *e.g.* failing to accept a mandatory work assignment).

The Bureau's proposed amendments to 28 CFR 541.3 (https://www.ecfr.gov/current/title-28/section-541.3), Table 1 (Prohibited Acts and Available Sanctions), were intended to resemble the structure of current sanctions for loss of Good Conduct Time, which allow for forfeiture in escalating amounts depending on the severity level of the prohibited act committed. However, in light of the comments received, the Bureau alters the proposed forfeiture sanctions to more closely mirror the Good Conduct Time forfeiture sanctions, and accordingly decreases the amount of FSA Time Credits forfeiture sanctions for each prohibited act severity level offense by more than half.

Further, upon review, the Bureau agrees with commenters that it is inconsistent with the risk and needs assessment methodology to require clear conduct (behavior clear of inmate disciplinary infractions under 28 CFR part 541 (https://www.ecfr.gov/current/title-28/part-541)) for four consecutive assessments to permit restoration of forfeited Time Credits, and therefore alters the regulation to maintain consistency with the Department of Justice risk and needs assessment methodology—requiring clear conduct for *two* consecutive assessments (one year) as a condition of restoring forfeited Time Credits.

*COMMENT: The FSA should be applicable to DC Code Offenders.*

The Bureau reopened the comment period of the proposed rulemaking from October 18, 2021, until November 17, 2021, to solicit public comment on the limited issue of whether DC Code offenders in Bureau of Prisons custody are eligible to apply Time Credits under 18 U.S.C. 3632(d)(4) (https://www.govinfo.gov/link/uscode/18/3632), as added by the FSA. 86 FR 57612 (/citation/86-FR-57612). We received thirty submissions during the reopened comment period. However, of those submissions, only eighteen were comments relating to the limited issue. Twelve submissions related to issues raised during the proposed rule comment period in 2020 or to specific circumstances of particular inmates in Bureau facilities and their eligibility for FSA Time Credits, rather than the limited issue for which the document reopened the comment period. As we stated above with regard to submissions unrelated to the proposed rule, we encourage those with questions regarding particular inmates to address those questions to staff at facilities where those inmates are housed, or to the regional offices with oversight for those facilities.

*RESPONSE:* The October 18, 2021 document indicated that the proposed rule would have expressly excluded from time-credit eligibility any inmate serving a term of imprisonment only for an offense under the laws of the District of Columbia. The FSA, however, is ambiguous as to whether those with convictions under the DC Code are eligible to apply FSA Time Credits through their participation in EBRR programs or PAs.

Some comments pointed to features of the statute's text or history, suggesting that Congress intended DC Code offenders to be eligible to apply FSA Time Credits to their sentences. A comment from the Public Defender Service for the District of Columbia noted that the FSA defines "prisoner" as "a person who has been sentenced to a term of imprisonment pursuant to a conviction for a Federal criminal offense, or a

person in the custody of the Bureau of Prisons." 18 U.S.C. 3635(4) (https://www.govinfo.gov/link/uscode/18/3635). That definition includes DC Code offenders, who the commenter pointed out are in Bureau custody under the National Capital Revitalization and Self Government Improvement Act of 1997, which requires that "any person who has been convicted of a felony offense pursuant to the District of Columbia Code . . . shall be subject to any law or regulation applicable to persons committed for violations of laws of the United States consistent with the sentence imposed." 111 Stat. 251 at 734; Public Law 105-33 (https://www.govinfo.gov/link/plaw/105/public/33), Sec. 11021 (the "DC Revitalization Act").

A comment from Senator Cory Booker (D-NJ) noted that other unenacted bills addressing similar subjects that preceded the enactment of the FSA would have defined "prisoner" as a person sentenced for a federal offense. *See* Corrections and Recidivism Reduction Act of 2016, H.R. 759, 114th Cong. 8(4) (as introduced Feb. 5, 2015 sub nom. Recidivism Risk Reduction Act), *https://www.congress.gov/bill/114th-congress/ house-bill/759/text/ih (https://www.congress.gov/bill/114th-congress/house-bill/759/text/ih)* (defining "prisoner" as "a person who has been sentenced to a term of imprisonment pursuant to a conviction for a Federal criminal offense"); the Sentencing Reform and Corrections Act ▯ of 2015, S. 2123, 114th Cong. 202(b)(8) (as introduced Oct. 1, 2015), *https://www.congress.gov/bill/114th-congress/senate-bill/2123/ text/is (https://www.congress.gov/bill/114th-congress/senate-bill/2123/text/is)* (defining "eligible prisoner" as "a prisoner serving a sentence of incarceration for conviction of a Federal offense," with exceptions for medical and security circumstances and sentences under one month).

▯ Start Printed
Page 2715

But there are other statutory features suggesting Congress may not have intended the FSA Time Credit program to alter the time that DC Code offenders spend in Bureau facilities while serving sentences imposed by the District of Columbia. As noted, the DC Revitalization Act commits DC Code offenders to Bureau custody, but provides that these offenders "shall be subject to any law or regulation applicable to" U.S. Code offenders only insofar as those laws or regulations are "consistent with the sentence imposed." (DC Code section 24-101(b).) While this restriction does not appear to bar DC Code offenders from earning FSA Time Credits, it does appear to bar them from applying those credits in a way that would change the duration of their DC-imposed sentences, *i.e.,* by granting them early supervised release. Even given this limitation that currently exists by virtue of the DC Code, it is possible that Congress intended to permit DC Code offenders to use Time Credits to secure an early transfer to prerelease custody, which does not change the sentence's duration. But the fact that at least part of the FSA Time Credit program is inconsistent with the terms on which the DC Code has committed DC Code felons to Bureau custody suggests otherwise.

In addition, Congress took care to preclude violent U.S. Code offenders from using FSA Time Credits to secure an early release from Bureau facilities, specifying a long list of serious Federal crimes in 18 U.S.C. 3632(d)(4)(D) (https://www.govinfo.gov/link/uscode/18/3632), a conviction for which makes a prisoner ineligible to earn Time Credits.[5] Congress's failure to provide an analogous list of serious DC Code offenses could indicate that Congress did not intend DC Code offenders to be eligible to apply Time Credits. Similarly, the FSA states that the Time Credit system does not apply "with respect to offenses committed before November 1, 1987," ( *see* Section 102(b)(3) of the FSA), which is the date Federal parole was abolished, but does not contain any like provision for the date DC parole was abolished (2000). If the FSA is construed to afford DC Code offenders in Bureau custody a right to apply Time Credits, Congress's failure to account for the date on which DC parole was abolished would mean that some DC Code offenders could be eligible for both parole and the FSA Time Credit program. Congress could have acted to avoid the overlap of these two programs, and the fact that Congress did not do so could further suggest that Congress did not intend the FSA to make DC Code offenders eligible to apply Time Credits.

Finally, there is a textual basis for concluding that Congress did not intend the FSA to make DC Code offenders eligible to use Time Credits. In Section 105 of the FSA, Congress provided that nothing in the FSA "may be construed to provide authority to place a prisoner in prerelease custody or supervised release who is serving a term of imprisonment pursuant to a conviction for an offense under the laws of one of the 50 States, or of a territory or possession of the United States." 18 U.S.C. 3621 Note (https://www.govinfo.gov/link/uscode/18/3621Note). As a comment (from the DC Justice Lab, Democracy Forward Foundation, FAMM, Justice Action Network, National Association of Criminal Defense Lawyers, Washington Lawyers' Committee for Civil Rights, and Urban Affairs) noted, it is unclear whether the District of Columbia is "one of the 50 States," a "territory," or a "possession" of the United States. The Bureau agrees that Section 105 is ambiguous; statutory references to States and territories may or may not be understood to include the District of Columbia, depending on the statutory context. *See, e.g., District of Columbia* v. *Carter,* 409 U.S. 418, 420 (1973). Particularly in light of the statutory features above, Section 105 could be read to manifest Congress's desire to avoid interference with non-U.S. Code sentences of offenders who end up in Bureau custody.

Overall, there is significant ambiguity about whether and to what extent DC Code offenders are eligible to apply FSA Time Credits under the statute. A construction of the FSA that would allow DC Code offenders to apply Time Credits under federal law would create particular concerns because of the absence of any basis on which to preclude DC Code offenders convicted of violent crimes from then using Time Credits. That result would substantially diverge from the FSA provision that expressly bars federal inmates convicted of any one of a list of 68 categories of enumerated violent offenses (only one of which includes any DC Code offenses, and only under certain conditions, see 18 U.S.C. 3632(d)(4)(D)(li) (https://www.govinfo.gov/link/uscode/18/3632)) from receiving FSA Time Credits. Although the majority of the comments received during the reopened comment period supported allowing DC Code offenders to earn FSA Time Credits, they largely failed to address the issue of whether violent DC Code offenders should be eligible to apply such credits along with non-violent offenders. A single comment received during the reopened comment period opposed application of the FSA to DC Code offenders in Bureau custody, expressing concern that the rule would "undermine the criminal justice system and allow these violent offenders to re-enter society to only most likely commit these violent crimes again." The lack of additional discussion in the comments regarding this issue is particularly problematic because the overwhelming majority of DC offenders in Bureau custody are serving sentences for violent offenses analogous to the list of offenses that disqualify federal offenders from receiving FSA Time Credits.

The Bureau is also concerned that adopting a reading of the FSA to permit DC Code offenders to leave Bureau facilities before they have served their DC-imposed sentences stands in some tension with other provisions of the DC Code. In other circumstances, where the length of a DC Code offender's sentence would be reduced, there are specific authorities in the DC Code to authorize such actions. For example, the DC Code specifies that offenders sentenced to imprisonment for felonies committed after August 5, 2000, "may receive good time credit toward service of the sentence only as provided in 18 U.S.C. 3624(b) (https://www.govinfo.gov/link/uscode/18/3624)" (DC Code section 24-403.01(d)); that those sentenced to imprisonment after August 5, 2000, "for a nonviolent offense may receive up to a one-year reduction" for completing a substance-abuse-treatment program in accordance with 18 U.S.C. 3621(e)(2) (https://www.govinfo.gov/link/uscode/18/3621) (DC Code section 24-403.01(d-1)(1)); and that certain DC Code offenders who committed their crimes before age 25 have an opportunity to be resentenced to a reduced term (DC Code section 24-403.03). There are no similar provisions to allow DC Code offenders to have sentences reduced by early placement on supervised release under the terms of the FSA.

Many of these considerations implicate the sovereignty of the District of Columbia and its authority over DC Code offenders and could be addressed through local legislation. The Bureau further understands that the DC Council is actively considering whether and ⬜ under what circumstances DC Code offenders should be eligible for FSA Time Credits as a matter of DC law. The Council has the authority and latitude to incorporate the FSA Time Credit program by reference into the DC Code and specify which DC Code offenders are eligible to apply FSA Time Credits. The DC Council may, for example, develop a list of excluded DC Code offenses that parallels the list of violent federal offenses in 18 U.S.C. 3632(d)(4)(D) (https://www.govinfo.gov/link/uscode/18/3632), or otherwise clarify whether and in what circumstances inmates may apply Time Credits toward pre-release custody and/or supervised release. Should the Council enact legislation that speaks to the issues presented by the FSA's ambiguity, such legislation could significantly inform, or dictate, the relevance of the FSA's time-credit program to DC Code offenders in the Bureau's custody.

⬜ Start Printed Page 2716

In light of these statutory interpretation and policy considerations, and the current deliberations of the DC Council, the Bureau will defer definitively resolving the FSA's ambiguities with respect to DC Code offenders in its custody. The final rule therefore is amended to reflect the possibility that the DC Council will enact legislation regarding the eligibility of such offenders to apply FSA Time Credits. Thus, any inmate in Bureau custody who is sentenced to a term of imprisonment under the Criminal Code of the District of Columbia is, at present, not eligible to apply FSA Time Credits unless the laws of the District of Columbia are amended to authorize the application of such credits. The Bureau may revisit this question through future rulemaking, depending on the outcome of the DC Council's consideration of these issues, and any other relevant developments.

## Regulatory Certifications

*Executive Orders 12866 and 13563:* Because this proposed rule may raise novel legal or policy issues arising out of implementation of the First Step Act, the Office of Management and Budget (OMB) has determined that it constitutes a "significant regulatory action" under section 3(f) of Executive Order 12866 and has reviewed it.

The economic impact of this rule is limited to a specific subset of inmates who are eligible to earn and apply FSA Time Credits toward additional prerelease custody or early transfer to supervised release. Under the FSA, FSA Time Credits may be earned by an eligible inmate who is assessed to have a minimum or low risk for recidivating and who has had no increased risk of recidivism over the most recent two consecutive assessments conducted by the Bureau. Consistent with the FSA, inmates in Bureau custody are assessed under its risk and needs assessment system, which includes both static and dynamic elements.

For example, on August 27, 2020, 131,386 inmates had been assessed under the risk and needs assessment tool and received a risk and needs assessment score. The risk and needs assessment scores for the entire group of 131,386 inmates were: 50,060 classified as high; 25,043 classified as medium; 38,084 classified as low; and 18,199 classified as minimum. Of these inmates, approximately 65,000 would be ineligible to earn FSA Time Credits under the FSA due to the inmate's crime of conviction. This data represents a snapshot of those inmates in Bureau custody as of August 27, 2020.

The Bureau conducted risk and needs assessments for Federal inmates and assigned EBRR Programs by the January 15, 2020, FSA deadline. As of that date, recidivism risk assessment levels of High, Medium, Low, or Minimum were assigned to all sentenced inmates at Bureau designated facilities. The Bureau anticipates that

this data will change continually, as inmates in custody earn reductions in risk classification, based on program participation and other dynamic factors, and inmates enter and release from Bureau custody.

The Bureau anticipates that as a result of this rule and the FSA, additional inmates will engage in programming to earn FSA Time Credits. As discussed above, FSA Time Credits may be earned for successful completion of an EBRR Program or PA that is assigned to an inmate based on the inmate's needs assessment. The current list of these programs can be found at *https://www.bop.gov/inmates/fsa/docs/ 2021_fsa_program_guide.pdf (https://www.bop.gov/inmates/fsa/docs/2021_fsa_program_guide.pdf)*. These programs are available to all inmates regardless of an inmate's eligibility to earn FSA Time Credits.

The rule may also result in movement of eligible inmates who earn FSA Time Credits from Bureau facilities to prerelease custody in the community (including RRCs and home confinement) earlier in the course of their confinement and for a longer period of time than would have previously occurred. In some cases, this transfer of time from secured confinement to prerelease custody may result in increased costs, depending on the relative costs of the inmate's current facility and the costs associated with housing or supervision in prerelease custody.

The rule may also result in the early transfer of inmates from custody to supervised release, functionally shortening their term of imprisonment. In such cases, the Bureau would avoid costs that would otherwise have been incurred to confine the affected inmates for that amount of time.

At present, therefore, specific monetary costs or savings for these future actions cannot be calculated. But, consistent with the purpose of the statute, the proposed rule will enhance public safety and reduce the need for future incarceration by providing significant incentives to encourage inmates to participate in evidence-based programs intended to reduce their risk of recidivism and help facilitate their successful reentry back into society after they have served their time.[6]

For these reasons, it is not possible to forecast the actual economic effect of this rule. However, given the mix of cost increases and savings which may result, the overall long-term economic impact is expected to be marginal in either direction.

The purpose of this rule is to codify the Bureau's procedures regarding the earning and application of time credits as authorized by the FSA. Time credits may be applied towards prerelease custody or early transfer to supervised release, and some inmates will be eligible for such custody or release as soon as this rule goes into effect. Delaying implementation for 30 days could therefore deprive at least some inmates of time in the less restrictive environments that Congress has determined are appropriate for eligible inmates. Given the liberty issues implicated by the prompt implementation of this program and this rule, the Bureau is prepared to begin implementation immediately, and the Bureau therefore finds good cause for exempting this rule from the provision of the Administrative Procedure Act (5 U.S.C. 553(d) (https://www.govinfo.gov/link/uscode/5/553)) which ordinarily requires a delay in effective date. The Bureau notes that neither it nor the affected inmates require a delay to adjust their practices before this rule takes effect. A delay in the effective date of this final rule would be unnecessary and contrary to the public interest.

*Executive Order 13132 (/executive-order/13132):* This rule will not have substantial direct effect on the States, on the relationship between the National Government and the States, or on the distribution of power and responsibilities among the various ☐ levels of government. Therefore, under Executive Order 13132

☐ Start Printed
Page 2717

(/executive-order/13132), we determine that this rule does not have sufficient federalism implications to warrant the preparation of a Federalism Assessment.

*Regulatory Flexibility Act:* The Director of the Bureau of Prisons, under the Regulatory Flexibility Act (5 U.S.C. 605(b) (https://www.govinfo.gov/link/uscode/5/605)), reviewed this rule and certifies that it will not have a significant economic impact upon a substantial number of small entities for the following reasons: This rule pertains to the correctional management of offenders committed to the custody of the Attorney General or the Director of the Bureau of Prisons, and its economic impact is limited to the Bureau's appropriated funds.

*Unfunded Mandates Reform Act of 1995:* This rule will not result in the expenditure by State, local, and tribal governments, in the aggregate, or by the private sector, of $100,000,000 or more in any one year, and it will not significantly or uniquely affect small governments. Therefore, no actions were deemed necessary under the provisions of the Unfunded Mandates Reform Act of 1995.

*Congressional Review Act:* This rule is not a major rule as defined by the Congressional Review Act, 5 U.S.C. 804 (https://www.govinfo.gov/link/uscode/5/804).

For the foregoing reasons, we issue the regulations regarding the First Step Act Time Credits, proposed on November 25, 2020, with modifications, as set forth below.

## List of Subjects in 28 CFR Parts 523 (https://www.ecfr.gov/current/title-28/part-523) and 541 (https://www.ecfr.gov/current/title-28/part-541)

- Prisoners

Michael D. Carvajal,

Director, Federal Bureau of Prisons.

Under rulemaking authority vested in the Attorney General in 5 U.S.C. 301 (https://www.govinfo.gov/link/uscode/5/301); 28 U.S.C. 509 (https://www.govinfo.gov/link/uscode/28/509), 510 (https://www.govinfo.gov/link/uscode/28/510) and delegated to the Director, Bureau of Prisons in 28 CFR 0.96 (https://www.ecfr.gov/current/title-28/section-0.96), we amend 28 CFR parts 523 (https://www.ecfr.gov/current/title-28/part-523) and 541 (https://www.ecfr.gov/current/title-28/part-541) as follows:

## Subchapter B—Inmate Admission, Classification, and Transfer

## PART 523—COMPUTATION OF SENTENCE

**1.** The authority citation for 28 CFR part 523 (https://www.ecfr.gov/current/title-28/part-523) is revised to read as follows:

**Authority:** 5 U.S.C. 301 (https://www.govinfo.gov/link/uscode/5/301); 18 U.S.C. 3568 (https://www.govinfo.gov/link/uscode/18/3568) (repealed November 1, 1987, as to offenses committed on or after that date), 3621, 3622, 3624, 3632, 3635, 4001, 4042, 4081, 4082 (repealed in part as to conduct occurring on or after November 1, 1987), 4161-4166 (repealed October 12, 1984, as to offenses committed on or after November 1, 1987), 5006-5024 (repealed October 12, 1984, as to

conduct occurring after that date), 5039; 28 U.S.C. 509
(https://www.govinfo.gov/link/uscode/28/509), 510
(https://www.govinfo.gov/link/uscode/28/510).

**2.** Add subpart E to read as follows:

## Subpart E—First Step Act Time Credits

**523.40**     Purpose.
**523.41**     Definitions.
**523.42**     Earning First Step Act Time Credits.
**523.43**     Loss of FSA Time Credits.
**523.44**     Application of FSA Time Credits.

**§ 523.40**     **Purpose.**

(a) The purpose of this subpart is to describe procedures for the earning and application of Time Credits as authorized by 18 U.S.C. 3632(d)(4) (https://www.govinfo.gov/link/uscode/18/3632) and Section 101 of the First Step Act of 2018 (Pub. L. 115-391 (https://www.govinfo.gov/link/plaw/115/public/391), December 21, 2018, 132 Stat. 5194) (FSA), hereinafter referred to as "FSA Time Credits" or "Time Credits."

(b) Generally, as defined and described in this subpart, an eligible inmate who successfully participates in Evidence-Based Recidivism Reduction (EBRR) Programs or Productive Activities (PAs) that are recommended based on the inmate's risk and needs assessment may earn FSA Time Credits to be applied toward prerelease custody or early transfer to supervised release under 18 U.S.C. 3624(g) (https://www.govinfo.gov/link/uscode/18/3624).

**§ 523.41**     **Definitions.**

(a) *Evidence-Based Recidivism Reduction (EBRR) Program.* An EBRR Program is a group or individual activity that has been shown by empirical evidence to reduce recidivism or is based on research indicating that it is likely to be effective in reducing recidivism; and is designed to help prisoners succeed in their communities upon release from prison. EBRR Programs may include, but are not limited to, those involving the following types of activities:

(1) Social learning and communication, interpersonal, anti-bullying, rejection response, and other life skills;

(2) Family relationship building, structured parent-child interaction, and parenting skills;

(3) Classes on morals or ethics;

(4) Academic classes;

(5) Cognitive behavioral treatment;

(6) Mentoring;

(7) Substance abuse treatment;

(8) Vocational training;

(9) Faith-based classes or services;

(10) Civic engagement and reintegrative community services;

(11) Inmate work and employment opportunities;

(12) Victim impact classes or other restorative justice programs; and

(13) Trauma counseling and trauma-informed support programs.

(b) *Productive Activity (PA).* A PA is a group or individual activity that allows an inmate to remain productive and thereby maintain or work toward achieving a minimum or low risk of recidivating.

(c) *Successful participation.* (1) An eligible inmate must be "successfully participating" in EBRR Programs or PAs to earn FSA Time Credits for those EBRR Programs or PAs.

(2) "Successful participation" requires a determination by Bureau staff that an eligible inmate has participated in the EBRR programs or PAs that the Bureau has recommended based on the inmate's individualized risk and needs assessment, and has complied with the requirements of each particular EBRR Program or PA.

(3) Temporary operational or programmatic interruptions authorized by the Bureau that would prevent an inmate from participation in EBRR programs or PAs will not ordinarily affect an eligible inmate's "successful participation" for the purposes of FSA Time Credit eligibility.

(4) An eligible inmate, as described in paragraph (d) of this section, will generally not be considered to be "successfully participating" in EBRR Programs or PAs in situations including, but not limited to:

(i) Placement in a Special Housing Unit;

(ii) Designation status outside the institution ( *e.g.,* for extended medical placement in a hospital or outside institution, an escorted trip, a furlough, etc.);

(iii) Temporary transfer to the custody of another Federal or non-Federal government agency ( *e.g.,* on state or Federal writ, transfer to state custody for service of sentence, etc.);

(iv) Placement in mental health/psychiatric holds; or

(v) "Opting out" (choosing not to participate in the EBRR programs or PAs that the Bureau has recommended based on the inmate's individualized risk and needs assessment).

(5)(i) If an eligible inmate "opts out," or chooses not to participate in any of the EBRR programs or PAs that the Bureau has recommended based on the inmate's individualized risk and needs assessment, the inmate's choice must be documented by staff.

(ii) Opting out will not, by itself, be considered a disciplinary violation. However, violation of specific requirements or rules of a particular recommended EBRR Program or PA, including refusal to participate or withdrawal, may be considered a disciplinary violation ( *see* this part).

(iii) Opting out will result in exclusion from further benefits or privileges allowable under the FSA, until the date the inmate "opts in" (chooses to participate in the EBRR programs or PAs that the Bureau has recommended based on the inmate's individualized risk and needs assessment, as documented by staff).

☐ Start Printed Page 2718

(d) *Eligible inmate* —(1) *Eligible to earn FSA Time Credits.* An inmate who is *eligible to earn* FSA Time Credits is an *eligible inmate* for the purposes of this subpart. Any inmate sentenced to a term of imprisonment pursuant to a conviction for a Federal criminal offense, or any person in the custody of the Bureau, is *eligible to earn* FSA Time Credits, subject to the exception described in paragraph (d)(2) of this section.

(2) *Exception.* If the inmate is serving a term of imprisonment for an offense specified in 18 U.S.C. 3632(d)(4)(D) (https://www.govinfo.gov/link/uscode/18/3632), the inmate is not *eligible to earn* FSA Time Credits.

§ 523.42        **Earning First Step Act Time Credits.**

(a) *When an eligible inmate begins earning FSA Time Credits.* An eligible inmate begins earning FSA Time Credits after the inmate's term of imprisonment commences (the date the inmate arrives or voluntarily surrenders at the designated Bureau facility where the sentence will be served).

(b) *Dates of participation in EBRRs or PAs.* (1) An inmate cannot earn FSA Time Credits for programming or activities in which he or she participated before December 21, 2018, the date of enactment of the First Step Act of 2018.

(2) An eligible inmate, as defined in this subpart, may earn FSA Time Credits for programming and activities in which he or she participated from December 21, 2018, until January 14, 2020.

(3) An eligible inmate, as defined in this subpart, may earn FSA Time Credit if he or she is successfully participating in EBRR programs or PAs that the Bureau has recommended based on the inmate's individualized risk and needs assessment on or after January 15, 2020.

(c) *Amount of FSA Time Credits that may be earned.* (1) For every thirty-day period that an eligible inmate has successfully participated in EBRR Programs or PAs recommended based on the inmate's risk and needs assessment, that inmate will earn ten days of FSA Time Credits.

(2) For every thirty-day period that an eligible inmate has successfully participated in EBRR Programs or PAs recommended based on the inmate's risk and needs assessment, that inmate will earn an additional five days of FSA Time Credits if the inmate:

(i) Is determined by the Bureau to be at a minimum or low risk for recidivating; and

(ii) Has maintained a consistent minimum or low risk of recidivism over the most recent two consecutive risk and needs assessments conducted by the Bureau.

§ 523.43        **Loss of FSA Time Credits.**

(a) *Procedure for loss of FSA Time Credits.* An inmate may lose earned FSA Time Credits for violation of the requirements or rules of an EBRR Program or PA. The procedures for loss of FSA Time Credits are described in 28 CFR part 541 (https://www.ecfr.gov/current/title-28/part-541).

(b) *How to appeal loss of FSA Time Credits.* Inmates may seek review of the loss of earned FSA Time Credits through the Bureau's Administrative Remedy Program (28 CFR part 542 (https://www.ecfr.gov/current/title-28/part-542)).

(c) *Restoration of FSA Time Credits.* An inmate who has lost FSA Time Credits under this subpart may have part or all of the FSA Time Credits restored to him or her, on a case-by-case basis, after clear conduct (behavior clear of inmate disciplinary infractions under 28 CFR part 541 (https://www.ecfr.gov/current/title-28/part-541)) for two consecutive risk and needs assessments conducted by the Bureau.

§ 523.44        **Application of FSA Time Credits.**

(a) *How Time Credits may be applied.* For any inmate eligible to earn FSA Time Credits under this subpart who is:

(1) Sentenced to a term of imprisonment under the U.S. Code, the Bureau may apply FSA Time Credits toward prerelease custody or supervised release as described in paragraphs (c) and (d) of this section.

(2) Subject to a final order of removal under immigration laws as defined in 8 U.S.C. 1101(a)(17) (https://www.govinfo.gov/link/uscode/8/1101) ( *see* 18 U.S.C. 3632(d)(4)(E) (https://www.govinfo.gov/link/uscode/18/3632)), the Bureau may not apply FSA Time Credits toward prerelease custody or early transfer to supervised release.

(3) Serving a term of imprisonment pursuant to a conviction for an offense under laws other than the U.S. Code (see Section 105 of the FSA, Pub. L. 115-391 (https://www.govinfo.gov/link/plaw/115/public/391), 132 Stat. 5214 (not codified; included as note to 18 U.S.C. 3621 (https://www.govinfo.gov/link/uscode/18/3621))), the Bureau may not apply FSA Time Credits toward prerelease custody or early transfer to supervised release. This paragraph (a)(3) will not bar the application of FSA Time Credits, as authorized by the DC Code, for those serving a term of imprisonment for an offense under the DC Code.

(b) *Consideration for application of FSA Time Credits.* Where otherwise permitted by this subpart, the Bureau may apply FSA Time Credits toward prerelease custody or early transfer to supervised release under 18 U.S.C. 3624(g) (https://www.govinfo.gov/link/uscode/18/3624) only if an eligible inmate has:

(1) Earned FSA Time Credits in an amount that is equal to the remainder of the inmate's imposed term of imprisonment;

(2) Shown through the periodic risk reassessments a demonstrated recidivism risk reduction or maintained a minimum or low recidivism risk, during the term of imprisonment; and

(3) Had the remainder of his or her imposed term of imprisonment computed under applicable law.

(c) *Prerelease custody.* The Bureau may apply earned FSA Time Credits toward prerelease custody only when an eligible inmate has, in addition to satisfying the criteria in paragraph (b) of this section:

(1) Maintained a minimum or low recidivism risk through his or her last two risk and needs assessments; or

(2) Had a petition to be transferred to prerelease custody or supervised release approved by the Warden, after the Warden's determination that:

(i) The prisoner would not be a danger to society if transferred to prerelease custody or supervised release;

(ii) The prisoner has made a good faith effort to lower their recidivism risk through participation in recidivism reduction programs or productive activities; and

(iii) The prisoner is unlikely to recidivate.

(d) *Transfer to supervised release.* The Bureau may apply FSA Time Credits toward early transfer to supervised release under 18 U.S.C. 3624(g) (https://www.govinfo.gov/link/uscode/18/3624) only when an eligible inmate has, in addition to satisfying the criteria in paragraphs (b) and (c) of this section:

(1) An eligible inmate has maintained a minimum or low recidivism risk through his or her last risk and needs assessment;

(2) An eligible inmate has a term of supervised release after imprisonment included as part of his or her sentence as imposed by the sentencing court; and

(3) The application of FSA Time Credits would result in transfer to supervised release no earlier than 12 months before the date that transfer to supervised release would otherwise have occurred.

## Subchapter C—Institutional Management

## PART 541—INMATE DISCIPLINE AND SPECIAL HOUSING UNITS

**3.** The authority citation for part 541 continues to read as follows:

**Authority:** 5 U.S.C. 301 (https://www.govinfo.gov/link/uscode/5/301); 18 U.S.C. 3621 (https://www.govinfo.gov/link/uscode/18/3621), 3622 (https://www.govinfo.gov/link/uscode/18/3622), 3624 (https://www.govinfo.gov/link/uscode/18/3624), 4001 (https://www.govinfo.gov/link/uscode/18/4001), 4042 (https://www.govinfo.gov/link/uscode/18/4042), 4081 (https://www.govinfo.gov/link/uscode/18/4081), 4082 (https://www.govinfo.gov/link/uscode/18/4082) (Repealed in part as to offenses committed on or after November 1, 1987), 4161-4166 (Repealed as ☐ to offenses committed on or after November 1, 1987), 5006-5024 (Repealed October 12, 1984 as to offenses committed after that date), 5039; 28 U.S.C. 509 (https://www.govinfo.gov/link/uscode/28/509), 510 (https://www.govinfo.gov/link/uscode/28/510).

☐ Start Printed Page 2719

**4.** Amend § 541.3 in paragraph (b), Table 1, by:

**a.** Under the heading "Available Sanctions for Greatest Severity Level Prohibited Acts", adding the entry B.2 in alphanumeric order;

**b.** Under the heading "Available Sanctions for High Severity Level Prohibited Acts", adding the entry B.2 in alphanumeric order;

**c.** Under the heading "Available Sanctions for Moderate Severity Level Prohibited Acts", adding the entry B.2 in alphanumeric order; and

**d.** Under the heading "Available Sanctions for Low Severity Level Prohibited Acts", adding the entry B.2 in alphanumeric order.

The additions read as follows:

§ 541.3 　 **Prohibited acts and available sanctions.**

★＊　　　　★＊　　　　★＊　　　　★＊　　　　★＊

(b) * * *

Table 1—Prohibited Acts and Available Sanctions



| ＊ | ＊ | ＊ | ＊ |
| ＊ | ＊ | ＊ | ＊ |

**Available Sanctions for Greatest Severity Level Prohibited Acts**

| ＊ | ＊ | ＊ | ＊ |
| ＊ | ＊ | ＊ | ＊ |

B.2　Forfeit up to 41 days of earned First Step Act (FSA) Time Credits ( *see* 28 CFR part 523, subpart E (https://www.ecfr.gov/current/title-28/part-523/subpart-E)) for each prohibited act committed.

| ＊ | ＊ | ＊ | ＊ |
| ＊ | ＊ | ＊ | ＊ |

**Available Sanctions for High Severity Level Prohibited Acts**

| ＊ | ＊ | ＊ | ＊ |
| ＊ | ＊ | ＊ | ＊ |

B.2　Forfeit up to 27 days of earned FSA Time Credits for each prohibited act committed.

| ＊ | ＊ | ＊ | ＊ |
| ＊ | ＊ | ＊ | ＊ |

**Available Sanctions for Moderate Severity Level Prohibited Acts**

| ＊ | ＊ | ＊ | ＊ |
| ＊ | ＊ | ＊ | ＊ |

B.2  Forfeit up to 14 days of earned FSA Time Credits for each prohibited act committed.

| * | * | * | * | |
| | * | * | * | |

---

### Available Sanctions for Low Severity Level Prohibited Acts

---

| * | * | * | * | |
| | * | * | * | |

B.2  Forfeit up to 7 days of earned FSA Time Credits (only where the inmate is found to have committed a second violation of the same prohibited act within 6 months; forfeit up to 14 days of FSA Time Credits (only where the inmate is found to have committed a third violation of the same prohibited act within 6 months).

| * | * | * | * | |
| | * | * | * | |

---

★* ★* ★* ★* ★*

**5.** Amend § 541.7 by revising paragraph (f) to read as follows:

§ **541.7**       **Unit Discipline Committee (UDC) review of the incident report.**

★* ★* ★* ★* ★*

(f) *Sanctions.* If you committed a prohibited act or prohibited acts, the UDC can impose any of the available sanctions in Tables 1 and 2 of § 541.3, except loss of good conduct time credit, FSA Time Credits, disciplinary segregation, or monetary fines.

## Footnotes

*1. See 18 U.S.C. 3621(h)(1)(C) (https://www.govinfo.gov/link/uscode/18/3621), referring to the "risk and needs assessment tools necessary to effectively implement the System over time," and sec. 3621(h)(2)(A), requiring that EBRR Programs and PAs be provided "before the date that is 2 years after the date on which the Bureau of Prisons completes a risk and needs assessment for each prisoner. . . ." The Bureau completed risk and needs assessments for every inmate in Bureau custody on January 15, 2020, and, therefore, as indicated by the FSA, had until January 15, 2022, to ensure that EBRR Programs and PAs are provided to eligible inmates in Bureau custody. The Bureau was already providing those programs and activities to eligible inmates well in advance of that date.*
Back to Citation

*2. See 18 U.S.C. 3621(h)(1) (https://www.govinfo.gov/link/uscode/18/3621).*
Back to Citation

*3. Most courts that have analyzed this issue, however, have found it reasonable for the Bureau to begin awarding Time Credits for successful completion on or after January 15, 2020, as opposed to holding that inmates are entitled to FSA Time Credits for successful completion of EBRR Programs and PAs occurring before that date but on or after December 21, 2018. See, e.g., Cohen v. United States, No. 20-cv-10833, 2021 WL 1549917, at *6 (S.D.N.Y. Apr. 20, 2021) ("[T]he statute does not require the BOP to begin awarding ETCs [earned time credits] during the phase-in period."); Kennedy-Robey v. Warden, FCI Pekin, No. 20-cv-1371 (C.D. Ill. Mar. 2, 2021) (ECF No. 14) ("Not only is the BOP's decision to delay awarding credits permitted under the statute, the BOP has legitimate reasons for desiring to do so."); Llewlyn v. Johns, No.*

5:20-cv-77, 2021 WL 535863 (S.D. Ga. Jan. 5, 2021); *Herring v. Joseph*, No. 4:20-CV-249, 2020 WL 3642706, at *1 (N.D. Fla. July 6, 2020); *Holt v. Warden*, 4:20-CV-04064-RAL, (D.S.D. May. 13, 2021; *Fleming v. Joseph*, No. 3:20CV5.990-LC-HTC, 2021 WL I66936I (N.D. Fla. Apr. 7, 2021) (report and recommendation). See also *Bowling v. Hudgins*, 2020 WL 1917490 (N.D. Va. Apr. 20, 2020); *Allen v. Hendrix*, 2020 WL 890396 (E.D. Ark. Feb. 24, 2020).

Back to Citation

4. See 28 CFR 541.3 (https://www.ecfr.gov/current/title-28/section-541.3), Table 1—Prohibited Acts and Available Sanctions: Moderate Severity Level Prohibited Acts, code 306: "Refusing to work or to accept a program assignment."

Back to Citation

5. See, e.g., 164 Cong. Rec. S7642 (daily ed. Dec. 17, 2018) (statement of Sen. Cornyn) ("There are some who, for example, say that this legislation will put violent criminals and sex offenders back on the streets, which is completely false. . . . This bill will not allow dangerous, violent criminals to be released early. . . . We have disqualified violent offenders . . . .").

Back to Citation

6. The costs or cost savings resulting from this rule will not be fully realized for years to come, as increasing numbers of inmates have opportunities to earn FSA Time Credits over their terms of incarceration, are transferred to prerelease custody or supervised release, and reintegrate into the community.

Back to Citation

[FR Doc. 2022-00918 (/d/2022-00918) Filed 1-14-22; 4:15 pm]

BILLING CODE P

PUBLISHED DOCUMENT