1                    UNITED STATES DISTRICT COURT
                    NORTHERN DISTRICT OF OHIO
2                        EASTERN DIVISION

3     ------------------------------X
      UNITED STATES OF AMERICA,      :  Case No. 1:16-cr-00224
4                                    :  Cleveland, Ohio
               Plaintiff,            :
5                                    :
          v.                         :  Wednesday,
6                                    :  February 1, 2023
      BOGDAN NICOLESCU,              :
7     RADU MICLAUS,                  :
                                     :
8              Defendants.           :
      ------------------------------X
9

10

11           TRANSCRIPT OF RESENTENCING PROCEEDINGS

12        BEFORE THE HONORABLE PATRICIA A. GAUGHAN

13           UNITED STATES CHIEF DISTRICT JUDGE

14
      Court Reporter:          Donnalee Cotone, RMR, CRR, CRC
15                             Realtime Systems Administrator
                               United States District Court
16                             801 West Superior Avenue
                               Court Reporters 7-189
17                             Cleveland, Ohio 44113
                               216-357-7078
18                             donnalee_cotone@ohnd.uscourts.gov

19

20

21

22

23

24    Proceedings recorded by mechanical stenography, transcript

25    produced by computer-aided transcription.

1    APPEARANCES:

2

3    For the Government:        **DUNCAN T. BROWN**

4                              **BRIAN M. MCDONOUGH**

5                              Assistant United States Attorneys

6                              801 West Superior Avenue

7                              Suite 400

8                              Cleveland, Ohio 44113

9                              216-622-3600

10                             duncan.brown@usdoj.gov

11                             Brian.McDonough@usdoj.gov

12

13   For the Defendant         **MICHAEL J. GOLDBERG, ESQ.**

14   Bogdan Nicolescu:         Law Office of Michael J. Goldberg

15                             323 W. Lakeside Avenue

16                             Suite 450

17                             Cleveland, Ohio 44113

18                             216-696-4514

19                             goldberg@goldberg-lawfirm.com

20

21

22

23

24

25

1    APPEARANCES (Continued):

2

3    For the Defendant          **MICHAEL J. O'SHEA, ESQ.**

4    Radu Miclaus:              Lipson O'Shea Legal Group

5                               110 Hoyt Block Building

6                               700 West St. Clair Avenue

7                               Cleveland, Ohio 44113

8                               216-241-0011

9                               michael@lipsonoshea.com

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

```
 1          MORNING SESSION, Wednesday, February 1, 2023

 2              (Proceedings commenced at 11:47 a.m.)

 3                          -  -  -

 4                 COURTROOM DEPUTY:  All rise.

 5                 THE COURT:  Please be seated.

 6          We are here in the matter of United States of America

 7    v. Bogdan Nicolescu and Radu Miclaus, Case Number

 8    1:16-cr-224.

 9             Present in court is Mr. Nicolescu; is that correct,

10    sir?

11                 DEFENDANT NICOLESCU:  Yes.  Yes.

12                 THE COURT:  Represented by his attorney,

13    Mr. Michael Goldberg.

14                 MR. GOLDBERG:  Good afternoon, Your Honor.

15                 THE COURT:  Also present is Mr. Miclaus; is

16    that correct?

17                 DEFENDANT MICLAUS:  Yes, ma'am.

18                 THE COURT:  Represented by his attorney,

19    Mr. Michael O'Shea.

20                 MR. O'SHEA:  Good morning, Your Honor.

21                 THE COURT:  Good morning.

22          On behalf of the Government is Mr. Duncan Brown and

23    Mr. Brian McDonough.

24                 MR. BROWN:  Good morning, Your Honor.

25                 THE COURT:  Good morning.
```

1          We are here today for purposes of a resentencing.

2          Let me briefly recap.  As to Count Group 1,

3     specifically Counts 1 through 15 and 21, this Court found a

4     total offense level of 43.  But because with a criminal

5     history category of I, the guideline imprisonment range is

6     life imprisonment, which exceeds the statutory maximum of 20

7     years, I gave a technical, legal reduction by five levels

8     resulting in a 38 and a I.  That was the first total offense

9     level in Criminal History Category I that incorporates the

10    statutory maximum of 240 months.

11         The Sixth Circuit affirmed the convictions, and the

12    Sixth Circuit affirmed all sentencing challenges except

13    receiving and selling stolen credit card accounts, two

14    levels, and a conviction under 18 U.S.C.

15    Section 1030(a)(5)(A), four levels, for a total of six

16    levels.

17         The 43 minus the six would have given us a total

18    offense level of a 37 and a I.  That range is 210 to 262.

19    And because of the statutory maximum, the range is really

20    technically 210 to 240.  This Court, therefore, would not

21    have had to depart legally in order to accommodate that

22    240-month maximum had this Court not given the six levels

23    that the Sixth Circuit has said now is improper.

24         Now, the Sixth Circuit acknowledged in the opinion

25    that I did, in fact, sentence both defendants below the

1  range of 235 to 293, the 38 and a I, and specifically

2  acknowledges that Mr. Nicolescu received a sentence within

3  the new range of 210 to 262, specifically a sentence of 216

4  months.

5  The Sixth Circuit acknowledged that Mr. Miclaus

6  received a sentence below the new range of 210 to 262.

7  Specifically, the Court gave a sentence of 192.

8  Now, again, I reiterate, I am speaking as to Count

9  Group 1.  We all know that both defendants received an

10  additional 24 months due to the remaining counts.

11  Even though the Sixth Circuit acknowledged that both

12  defendants received either a sentence within the new range

13  or below the range, the Sixth Circuit stated, we still must

14  remand for resentencing.

15  I have briefs from all parties involved.  It is the

16  Government's position that this is a limited remand, and,

17  therefore, this Court should not be conducting a de novo

18  review.

19  Mr. Goldberg, on behalf of his client, is arguing that

20  it is not a limited remand, but rather, the Court must

21  conduct a de novo review.

22  Mr. O'Shea, on behalf of his client, disagrees with

23  his codefendant's position, and instead, agrees with the

24  Government's position.  Therefore, this Court must make a

25  determination of whether or not this matter is before the

1    Court on a limited remand, or if I must conduct a de novo

2    review.

3         During a resentencing, District Courts in the

4    Sixth Circuit can review sentencing matters de novo unless

5    the remand order specifically limits the Court's authority

6    at resentencing.  In other words, the remand order may be

7    limited or it may be general.

8         If the remand is general in nature, then the District

9    Court can visit all aspects of the sentencing.  If the

10   remand order is limited, the District Court's authority

11   extends only to the directives set forth by the Court of

12   Appeals.  In the absence of a specific limitation, remand

13   orders are presumptively general.  A remand order is limited

14   only if the language used by the Court of Appeals is

15   unmistakable.  The language must convey the intent to limit

16   the scope of the District Court's review.  I quote

17   *United States v. McFalls*, 675 F.3d 599, Sixth Circuit 2012

18   case.

19        This intent is achieved by outlining the procedure the

20   District Court is to follow articulating the chain of

21   intended events with particularity and leaving no doubt as

22   to the scope of the remand.

23        I find that the remand order issued by the

24   Sixth Circuit in this case to be a general order of remand,

25   and, therefore, this Court must conduct a de novo

1    sentencing.

2         In the Sixth Circuit opinion, the Court indicated, and

3    I quote, "It is for the District Court to decide whether

4    starting from the correct guidelines range a downward

5    variance remains appropriate."

6         This Court does not find that the language is

7    unmistakably limiting the Court's authority.  Rather, it

8    appears that the Sixth Circuit simply indicated that it is

9    for the District Court and not the Court of Appeals to

10   decide this issue.  The opinion also remanded the matter,

11   "So that defendants can be resentenced under a correctly

12   calculated guidelines range."

13        I do not find that this language shows an intent to

14   limit this Court's authority at resentencing, nor does it

15   state with particularity the chain of events or proceedings

16   that this Court must engage in on remand.  My conclusion is

17   bolstered by the fact that ultimately, the Sixth Circuit

18   remanded this matter for resentencing without appending any

19   restrictive language.

20        I'm just going to leave it at that.

21        So I am now prepared to go through the presentence

22   investigation report as to each defendant and proceed with a

23   de novo review.

24             MR. GOLDBERG:  Your Honor, thank you.

25        May it please the Court:  Given that this is going to

1    be a de novo review, and there are sentencing issues that my

2    client would like to develop more fully given this chance to

3    do so, we would ask that, at least with regard to

4    Mr. Nicolescu, that this Court continue his sentencing

11:58:10   5    hearing to give us sufficient time to review the arguments

6    and prepare a thorough, complete sentencing memoranda.

7              THE COURT:  And I will state that you did, in

8    fact, inform this Court through a staff member that in the

9    event the Court found it to be a general order of remand,

11:58:40   10    that you were going to request this.

11         So I certainly was put on notice, and I understand the

12    Government was put on notice as well.

13              MR. BROWN:  Yes, Your Honor.

14              THE COURT:  And what is your position?

11:58:53   15              MR. BROWN:  Your Honor, our position would be

16    on de novo, we obviously would ask the Court to incorporate

17    by reference and consider as evidence the transcript from

18    the original sentencing.

19         But in terms of a request for more time to develop the

11:59:10   20    defendant's argument by Mr. Goldberg, we would -- we have no

21    objection to that, just for Mr. Goldberg.  And also, so we

22    can produce Mr. -- Special Agent Macfarlane who is in

23    Australia now by Zoom.

24              THE COURT:  Mr. Goldberg, you understand we

11:59:29   25    have -- we had a full hearing on this issue at the first

1    sentencing and Agent Macfarlane did, in fact, testify, and

2    his testimony is cited throughout the Sixth Circuit opinion.

3    I'm assuming that you would also agree that all of the

4    evidence presented by all parties would be incorporated into

11:59:52  5    the resentencing.

6         Is that sufficient for you so we can proceed today?

7              MR. GOLDBERG:  Your Honor, that would not be

8    sufficient from our point of view.  I'm sure it would be

9    sufficient for the Government.  But my client and I do need

12:00:14 10    to work on some arguments that were not really apparent two

11    or three years ago that are apparent now.  And if the matter

12    is going to be reopened, we would like to address them

13    fully.  So we wouldn't be able to go forward today.

14         But we would not object to the Court incorporating

12:00:36 15    Agent Macfarlane's prior testimony and whatever the

16    Government wants to add to that, augment it through

17    testimony, they will do so, and we will respond.

18         And for the record, we don't object to Macfarlane --

19    Agent Macfarlane appearing by electronic means, if that's

12:00:58 20    what the Government needs to do.

21              THE COURT:  I understand he is out of the

22    country.

23              MR. BROWN:  That's correct, Your Honor.

24              THE COURT:  So you would be asking that.

12:01:07 25              MR. BROWN:  Yes.

1          THE COURT:  So what I'm hearing you say is

2     that you are going to be asking me to go below the loss

3     amount that is referenced in the Court of Appeals' opinion,

4     and you, Government, will be asking me to go above that

12:01:29  5     amount.

6          Is that basically what I am hearing here?

7               MR. GOLDBERG:  That's correct, Your Honor.

8               MR. BROWN:  Your Honor, the Government's

9     position is at a de novo hearing, we will ask you for a

12:01:39 10     higher loss amount and whatever else is warranted by the

11     evidence.

12               THE COURT:  Okay.

13               MR. BROWN:  Thank you.

14               THE COURT:  All right.  Well, because you had

12:01:51 15     put me on notice regarding this issue, and because there is

16     no objection, I will grant your continuance.

17          I am going to -- the Government has the burden, as

18     always, on this issue.  Your brief is due February 24th, and

19     I'm going to call it a supplemental briefing.

12:02:19 20          Mr. Goldberg, yours will be due March 3rd.

21          Any reply brief will be due March 10th.  I will set

22     the hearing for March 22nd at 9:30.

23          Turning to the Government, do you have any problems

24     with any of those dates?

12:02:37 25               MR. BROWN:  No, Your Honor.  Thank you very

1    much.  That allows us to coordinate with Special Agent

2    Macfarlane adequately.

3         Thank you.

4                   THE COURT:  Mr. Goldberg --

12:02:46   5                   MR. GOLDBERG:  No, Your Honor.

6                   THE COURT:  -- any problem with any of those

7    dates?

8                   MR. GOLDBERG:  At this point, Your Honor, no

9    problem with the dates, and we appreciate the consideration.

12:02:55  10                   THE COURT:  All right.

11         Now, Mr. O'Shea, are you joining in on the motion to

12    continue?

13                   MR. O'SHEA:  No.

14                   THE COURT:  You are asking that this Court

12:03:10  15    proceed today, understanding my ruling of a de novo review?

16                   MR. O'SHEA:  Yes.

17                   THE COURT:  Mr. Miclaus, did you understand

18    what I asked your lawyer?

19                   DEFENDANT MICLAUS:  Yes.  Yes, Your Honor.

12:03:30  20                   THE COURT:  And are you in agreement that you

21    are not seeking a continuance?

22                   DEFENDANT MICLAUS:  Yes, I'm in agreement.

23                   THE COURT:  You would like to proceed with

24    sentencing today?

12:03:42  25                   DEFENDANT MICLAUS:  Yes, Your Honor.

1          THE COURT:  All right.  We will do so, if you

2     would just give me a moment.

3          Mr. Goldberg, Mr. Brown, Mr. McDonough, I would like

4     to see you at sidebar.

5               (Discussion held at sidebar off the record.)

6                              -  -  -

7                    (End of sidebar discussion.)

8          THE COURT:  Mr. Goldberg, on behalf of your

9     client, is there anything further?

12:04:49 10          MR. GOLDBERG:  Your Honor, I just think I

11     should make a record about the consequences of this

12     resentencing that have been made known to Mr. Nicolescu.

13     This is his decision.  He's been told that he could receive

14     a higher sentence, restitution, that this could be a poor

12:05:20 15     decision.  He understands the consequences fully, and this

16     is his knowing and voluntary decision, and I just want the

17     record to reflect that.

18          THE COURT:  And that is correct, is it not,

19     Mr. Nicolescu?

12:05:35 20          DEFENDANT NICOLESCU:  That is correct,

21     Your Honor.

22          THE COURT:  On behalf of the Government,

23     anything further relative to Mr. Nicolescu?

24          MR. BROWN:  Nothing specific to Mr. Nicolescu.

12:05:44 25          Thank you very much.

1    THE COURT:  All right.  Gentlemen, you are all

2    set for today.

3    MR. GOLDBERG:  Thank you.

4    (Pause in proceedings.)

12:06:57  5    MR. GOLDBERG:  Thank you, Your Honor.

6    THE COURT:  Certainly.

7    Mr. Miclaus, you may approach the podium with counsel.

8    In that this is a de novo sentencing, or review, I am

9    looking at the presentence investigation report, Document

12:07:25  10    Number 182.  According -- and this is the same presentence

11    report we used at the original sentencing.

12    According to this report, the base offense level is

13    seven.  According to the report, 20 levels are added for

14    loss.  However, at the original sentencing, I determined

12:07:49  15    that the amount of loss should be reduced to 18 levels.  And

16    I will, again, do that, unless the Government wishes to

17    argue otherwise in regards to this particular defendant.

18    MR. BROWN:  No, Your Honor.

19    And, in fact, with regard to this particular

12:08:08  20    defendant, we would ask that the transcript from the

21    original sentencing and the record from the original

22    sentencing be incorporated in today's proceedings as if they

23    were happening today.

24    THE COURT:  May I assume no objection?

12:08:23  25    MR. O'SHEA:  No objection.

1          THE COURT:  All right.  Two levels are added

2    due to the number of victims.

3          Two more levels are added in that the defendant was in

4    the business of receiving and selling stolen property.

12:08:43  5    Those two levels will be now deducted given the

6    Sixth Circuit opinion.

7          Two more levels are added due to the fact that a

8    substantial part of the scheme was committed from Romania,

9    and the scheme involved sophisticated means.

12:09:03 10    Two more levels are added in that the offense involved

11    trafficking of unauthorized access devices.

12          Four levels are added in that the defendant was

13    convicted under 18 U.S.C. Section 1030(a)(5)(A).  However,

14    pursuant to the Sixth Circuit opinion, those four levels

12:09:23 15    will be deleted.

16          We are, therefore, at Offense Level 31.  Two levels

17    are added in that the defendant was convicted under 18

18    U.S.C. Section 1956.

19          Two more levels are added in that the offense involved

12:09:49 20    sophisticated laundering.

21          There are no victim-related adjustments.

22          Four levels are added for role in the offense.

23          No adjustment for obstruction of justice for an

24    adjusted offense level subtotal of 37.

12:10:05 25          There are no Chapter 4 enhancements, no acceptance of

1  responsibility, for a total offense level of 37.  And that

2  is for Count Group 1.

3       Regarding Counts 16 through 20, the guideline range is

4  the statutory penalty, which is two years consecutive to any

12:10:33  5  other term of imprisonment.

6       The defendant has no criminal history points, which

7  correspond to a criminal history category of I.

8       Mr. O'Shea, do you have any objections to the manner

9  in which the guidelines have been applied given the changes

12:10:55  10  that I have articulated?

11            MR. O'SHEA:  No objection, Judge.

12            THE COURT:  And on behalf of the Government?

13            MR. BROWN:  None, Your Honor.

14       Thank you.

12:11:01  15            THE COURT:  On the issue of sentencing, do you

16  wish for me to turn to you first, Mr. O'Shea, or your

17  client?

18            MR. O'SHEA:  My client first, Your Honor.

19            THE COURT:  Mr. Miclaus, do you have anything

12:11:16  20  to say before I pronounce sentence?

21            DEFENDANT MICLAUS:  Yes, Your Honor.

22       From the bottom of my heart, I regret everything I

23  have done, and I take full responsibility for my actions,

24  and I accept the punishment.

12:11:39  25       I want to apologize to the Court today.  I want to

1      apologize to prosecution.  I want to apologize to the agents

2      and all the investigators that worked on the case.  It's a

3      big case, and I understand the work and hours they put in.

4      And I apologize to the victims because they were the ones

12:12:03  5      who suffered the most.  And I'm sorry for everything I've

6      done and all the pain I caused.

7          Thank you.

8              THE COURT:  Mr. O'Shea.

9              MR. O'SHEA:  Judge, let me indicate first that

12:12:19  10      my understanding -- and perhaps my client can elaborate

11      further -- while at the institution that he's at right now,

12      which is a pretty significantly high security-based

13      institution, that he has nevertheless performed as an

14      exemplary prisoner.  And I don't know if it's fair to argue

12:12:37  15      that now that we're back for resentencing.  But I think it's

16      only fair to argue that.

17          And then secondly, when I look at 3553, and I look at

18      the sentence that you gave back on December 6th, 2019, you

19      indicated in your sentencing statement of reasons, Judge,

12:13:00  20      that functionally he was getting what I calculate to be

21      about a 19-month variance.  And you identified the variance

22      as being related to the proffer that he gave early in the

23      case.  And I know that we all scratched our heads pretty

24      heavily when he decided to go to trial, notwithstanding that

12:13:19  25      proffer.  You know, and I told him today when we were

1    meeting that, you know, if he had done the -- what had been

2    offered back then, he'd be home in Romania right now,

3    ironically.

4         So I ask the Court, you know, whatever empathy the

12:13:36  5    Court and maybe even the Government can think about that.

6    He's done already six and a half years in prison for a guy

7    who has never been in trouble in his life.

8         Now, I laid out in our original sentencing memorandum

9    that we filed on January 31st where I think the Court should

12:13:54  10    go, and it's more of a, quite frankly, an equity argument

11    under 3553.  There's some mathematical calculations that I

12    placed in there, Judge, including, you know, where one might

13    start from an equity standpoint to get to where the real

14    equitable guideline calculation should be.  And I also

12:14:15  15    included a request that the Court carry forward the net

16    19-month variance that the Court gave us back in December

17    of 2019.

18         Now, to do what the Government wants you to do, Judge,

19    to me, the way I read the Court of Appeals' opinion is to

12:14:38  20    functionally ignore the import of that decision all

21    together.  And they want to make it -- I think the

22    Government wants to make it a paper victory and nothing

23    more.  And I don't want to say victory or loss, because it's

24    a matter of law, really, in the Court of Appeals' opinion.

12:14:57  25         So that six levels, or that -- you know, that minus

1    six-level net enhancement that we can apply has to be in the

2    soup of 3553 when it comes to issuing a sentence today based

3    upon the fact that those enhancements don't apply.

4        I feel relatively confident that when you issued that

12:15:19  5    sentence back in December of 2019, that those enhancements

6    went into the soup, the total mix of the totality of the

7    circumstances, including the variance and everything else in

8    the case.

9        So, obviously, I've asked the Court to get somewhere

12:15:34  10    down near a 32, you know, a new range, and that somewhere to

11    be 121 to 151 months, and then carry forward the variance of

12    19 months, and that gets us down, as we said in our brief,

13    to about 102 months.

14        Now, I understand that the Court has discretion when

12:15:52  15    it comes to following my path on that.  But I wanted to lay

16    out to the Court that we are relying in large measure on two

17    things:  I'm sorry.  Three things:

18        One, the original sentence that was handed down in

19    December of 2019.

12:16:10  20        Two, the Court of Appeals' decision and what it

21    reflects and what the import of that is.

22        And, three, the math that goes into the guidelines.

23    And I feel confident that this Court relies in large measure

24    on how the guidelines work, how they work mechanically.  And

12:16:31  25    in that regard, that mechanical aspect of the guidelines

1  says, you know, you got to start where you started back in

2  2019 and back down six levels.

3  So that's why I'm making this Level 32 argument,

4  because it seems empirical, objective, and fair based upon

12:16:53  5  what the Court of Appeals has said.

6  I feel -- and I don't want to speak for the Court.

7  Please don't take it that way.  But I got to believe, Judge,

8  when you imposed that 216 net sentence back in December

9  of 2019, you were including those two, you know, what we

12:17:13 10  call the offense enhancement and the 1030 enhancement in

11  that calculation.  And the Court of Appeals has said you

12  can't do that.  With all due respect to everything else that

13  was affirmed in the case, you can't do that.

14  So in that regard, Your Honor, with all due respect to

12:17:29 15  the arguments that the Government has made in their brief,

16  it is clear that the message that we're being sent is that

17  you can't do that.  And you can't just say -- and I think

18  the Government is asking you to do this, is that the big

19  Court of Appeals' opinion is a big so what.  You get to

12:17:46 20  do -- you get to functionally get him back to where he was

21  in December of 2019.  That seems fundamentally, academically

22  wrong given what the Court of Appeals has told us.

23  And, you know, obviously, you heard my client this

24  morning.  I think we're still in the morning, Your Honor.

12:18:08 25  No, we're actually in the afternoon.  I think what he said

1    to you just now like he said to you back in December is

2    real, not rehearsed.  I think this is a guy who is

3    absolutely unconditionally sorry about what has happened.

4         And I didn't grow up in Romania.  The Government

12:18:29  5    didn't grow up in Romania.  I don't know what it would have

6    been like to have to grow up in a country where -- and as

7    you may recall a trial judge where they said just about

8    every kid in high school learns how to do this.

9         So I think it's kind of unfair for the Government just

12:18:46  10   to say, well, it's -- Mr. Miclaus should be treated the same

11   way a kid that grew up in the United States is.  That's not

12   fair.  And that's against the evidence, by the way,

13   including the witness they called to the stand.

14        So we're asking the Government -- and I know it's --

12:19:03  15   there's a level of discretion, or a great level of

16   discretion here, Judge, that you follow the roadmap that we

17   mathematically laid out in our brief and give deference to

18   the message -- the macro message given to us by the Court of

19   Appeals.

12:19:18  20        Thank you.

21                  THE COURT:  Mr. Brown.

22                  MR. BROWN:  Thank you, Your Honor.

23        First of all, the Government would, based on this

24   de novo review and resentencing, ask that the defendant be

12:19:31  25   held to be joint and severely liable in restitution with

1    defendant Danet to the amount of $853,651.99.  That is a

2    number derived from loss amounts of victims provided by the

3    Government in Danet's sentencing.

4         The Government would argue that this is not, in fact,

5    merely a paper victory.  The Court of Appeals went through,

6    at great length, 27, 28 pages, going through all of the

7    challenged enhancements finding support in the record,

8    support from the testimony by Special Agent Macfarlane,

9    which is, again, included and incorporated by reference

10   herein in front of the Court today for all of the bases for

11   the loss amounts.  That was incorrectly calculated to 43 --

12   or to 48 actually, reduced to 43, and then, again, to 38.

13        Again, as the Court had described as technical or a

14   legal reduction, this was not a reduction for anything

15   inherent in the defendant's presentence report, in the

16   arguments made at the original sentencing.  It reflected his

17   level of guilt as he was -- as the facts developed at a

18   trial supported his guilt with a -- was at that time 43,

19   reduced to 38, and that reduction of five levels was, again,

20   to get him to the range that included the statutory maximum.

21        The Court then did grant a 19-month -- essentially a

22   19-month reduction, recognizing his proffers, which didn't

23   result in a plea.

24        The Government would argue that starting at a 37, you

25   know, those 19 months are functionally a two-level

1   reduction, which could be a 36, it could be a 35.  A 35 -- a

2   Level 35 is 168 to 210, which is inclusive of the original

3   192 months found by the Court.

4       So even if the Court were today to credit him the same

5   two levels for proffering as they did at the original

6   sentencing, that two levels would result in a similar

7   guideline -- or an inclusive guideline range of 192 months,

8   which was then enhanced by the one single 1028A, 24 months

9   under 1028A, like I said.

10      The Government argues that that calculation of 216

11  months is not just a paper victory.  It's not an easy quick

12  regurgitation.  It's a fair and accurate representation of

13  the defendant's role, the defendant's guilt, and the facts

14  that were developed at trial.

15      And, if anything, Your Honor, since the Bayrob Group

16  was taken down, since the Bayrob Group was prosecuted in

17  this court, the techniques and the processes that they

18  developed and that they used have only enhanced and only

19  increased in society.

20      The type of malware that was developed by the Bayrob

21  Group, while, you know, nowadays, eBay fraud is not as, sort

22  of hot of a topic in the cyber world.  It -- the

23  sophistication that was developed by the Bayrob Group served

24  as sort of the basis for the ransomware and the very

25  pernicious malware that has since been developed.

1    The idea of the Bayrob Group, you know, copying and

2    downloading entire servers and spoofing Web pages to control

3    computers is something that is now much more commonplace in

4    the sorts of malware and ransomware that is attacking

12:23:19  5    schools, hospitals, governments on a regular basis.

6    The level of sophistication with the money laundering

7    techniques used by the Bayrob Group, and the defendant

8    specifically, have only increased.  And the use of

9    cryptomining currency that the defendant himself was very

12:23:37  10    interested in his 2013 Twitter page, talking about Y pool,

11    is now the daily, sort of the coin of the realm, if you

12    will -- no pun intended -- of cybercriminals.  It's now --

13    ransomware is now dealing almost exclusively in the sort of

14    cryptocurrencies and electronic currencies that the

12:24:01  15    Bayrob Group, as early as 2013, were using.

16    So, Your Honor, a sentence of 216 months is still a

17    very relevant, still a very important sentence to levy

18    because it shows that even now, six years later -- six

19    years? -- seven years later, after the initial takedown,

12:24:21  20    these defendants are still doing the things -- or the --

21    that are reflected in society.  And that, in fact, the

22    threat matrix that exists is firmly rooted in the foundation

23    of what we're seeing in the Bayrob Group.  That this sends

24    an appropriate message to future criminals that, in fact,

12:24:41  25    they will be punished appropriately and proportionately, and

1       that's why the Government is continuing to ask for the 192

2       months, be it Level 37, 36, or 35, plus the 24 months

3       consecutive for the 11028A [sic].

4            And, Your Honor, the Government is not so cold and

12:24:59  5  heartless and immune to what we think is a heartfelt apology

6       by Mr. Miclaus.  But the Government would also argue that

7       the 1028As were based on five victims in the Northern

8       District of Ohio, who came here and testified, and had just

9       as much of a heart-wrenching story to tell the Court as

12:25:22 10  Mr. Miclaus presented today.  And that the need to protect

11      victims both in our district and nationwide, and, in fact,

12      with groups like this worldwide, is a very urgent and

13      important factor in this sentencing.

14           And that's why, again, we recommend the 216 months,

12:25:36 15  along with the finding of joint and severable liability for

16      restitution.

17           Thank you, Your Honor.

18                THE COURT:  You get the last word, Mr. O'Shea.

19                MR. O'SHEA:  Thank you, Judge.  Thank you very

12:25:45 20  much.

21           First of all, I've never heard a prosecutor get up and

22      say they're trying to hold a defendant who's been in prison

23      for a long time accountable for actions of people while they

24      were in prison.  That's a first for me.  But I understand

12:25:59 25  the academics of it.  But it's just unfair to say it's his

1    fault what other people are out on the street doing right

2    now.

3         Obviously, as we know, the programmer in this case,

4    MasterFraud, was Mr. Nicolescu and not my client.  So to

12:26:14  5    hold him accountable for all the software, the evilware

6    that's out there ain't fair to him.  He had a different

7    role.  Okay?  I know I'm talking academics.

8         Now, last but not least, I was going to point out --

9    assuming that I had the last word here -- is that the

12:26:31 10    Government -- and I'm hearing -- I think what I'm hearing is

11    that the Government is not objecting to this Court carrying

12    forward the 19-month variance.  Here's what I mean:  What I

13    did not see in the appeal was that the Government

14    cross-appealed about any argument that the variance was

12:26:48 15    inappropriate.  So they kind of waived that academically,

16    and they have to waive it up to today.  But I think they

17    have -- I don't know if it's clear from what I heard

18    Mr. Brown just say, but that was never appealed, Judge.  So

19    that's kind of as much in the cement as all the other things

12:27:08 20    that were affirmed by the Court of Appeals.

21         Thank you.

22              THE COURT:  Normally, I don't give a

23    sur-reply, but I'll allow it here.

24              MR. BROWN:  Well, Your Honor, I think that --

12:27:18 25    again, that departure down to 38 was just to get within an

1    inclusive range for 240 months.  With 37, we're at 210 to

2    262, which is really 210 to 240.

3         So I don't think that those departures to get to 38

4    have any, again, nonmechanical bearing in this case, and you

12:27:38  5    know, the Government's argument -- I'm glad I'm the first.

6    I'm glad with Mr. O'Shea's illustrative career, I can still

7    surprise him, you know, that Mr. Miclaus' actions serve as a

8    beacon on this shiny city on a hill, that's his fault.  He

9    engaged in coconspirators in a very, very sophisticated

12:27:59 10    crime.  His bad acts and his bad actions should continue to

11    serve as a deterrence nationwide and worldwide.

12              THE COURT:  And I apologize.  I should have

13    asked you a very narrow question.

14         Mr. O'Shea is indicating that you are not objecting to

12:28:14 15    a variance.  Now, I know his argument is, it should be more

16    of a variance than what I originally gave, but is he

17    correct, you are not objecting to a variance by requesting

18    the same sentence?

19              MR. BROWN:  That's correct.  You're correct,

12:28:34 20    Your Honor, and I apologize if I was not clear.

21         We're still asking for 192 months, whether it's in 37,

22    which would be below, or 36 or 35, Level 36 or 35, which

23    would be a two-level variance down.  We'd still be asking

24    for that 192.  So at Level 35, which is 168 to 210, we're

12:28:56 25    asking for the sentence of 192 months.

```
 1                    THE COURT:  Okay.  So we all understand, we

 2       are at a 37 and a I.  The 192, the first -- the first

 3       offense level to incorporate that would require a one-level

 4       downward variance.

 5                    MR. BROWN:  Correct, Your Honor.

 6                    THE COURT:  I just want to make sure we are

 7       all in agreement.

 8                    MR. BROWN:  That's correct.

 9                    THE COURT:  And you are not objecting to a

10       variance?

11                    MR. BROWN:  That's correct, Your Honor.

12                    THE COURT:  All right.  All right.

13            And, of course, I always give the defendant the last

14       word, so because I called on the Government, is there

15       anything else, Mr. O'Shea?

16                    MR. O'SHEA:  Said enough, Judge.

17            Thank you.

18                    THE COURT:  All right.  It is the judgment of

19       this Court, sir, that you be committed to the custody of the

20       Bureau of Prisons to be in prison for a term of 192 months

21       on Counts 1 through 13, and 21 --

22                    MR. BROWN:  Your Honor, 13.  It's supposed to

23       be 15.  One to 15.  Right?

24                    THE COURT:  No.  No, I'm not done.

25                    MR. BROWN:  Okay.  Sorry.
```

1          THE COURT:  192 on Counts 1 to 13; 60 months

2     on Count 14; 120 months on Count 15 because of the statutory

3     maximums, all to be served concurrently.  And 24 months on

4     each of Counts 16 to 20 to be served concurrently with each

12:30:32   5     other, but consecutively with all other counts, for a total

6     of 216 months.

7          Are you with me, Mr. Brown?

8          MR. BROWN:  I am.  Sorry.  I apologize,

9     Your Honor.

10          THE COURT:  That's all right.

11          MR. BROWN:  Math was never my strong suit.

12          THE COURT:  That's all right.

13          Mr. O'Shea, any objection to the restitution?

14          MR. O'SHEA:  No objection to the restitution,

12:31:05  15     Judge.

16          THE COURT:  I am going to order restitution in

17     the amount of $853,651.99.  That's a joint and several

18     obligation with any and all codefendants.  It must be paid

19     at a rate of 25 percent of your gross monthly income, sir,

12:31:25  20     through the Federal Bureau of Prisons Inmate Financial

21     Responsibility Program.

22          Any balance -- if there is a balance, payment is to

23     commence no later than 60 days following release from

24     imprisonment, and you must pay it at the rate of no less

12:31:44  25     than 10 percent of your gross monthly income.

1           And I apologize.  Before I got into restitution, I

2    should have stated, upon release from imprisonment, the

3    defendant is placed on supervised release for a term of

4    three years on Counts 1 to 15, one year on Count 21 --

12:32:09 5    strike that.

6           Three years on Counts 1 to 15 and 21, one year on

7    Count 16 to 20, all to run concurrently.

8           Within 72 hours of release from the custody of the

9    Bureau of Prisons, you must report in person to the

12:32:24 10    probation office in the district to which you are released.

11           I am not ordering a fine, but there is a $2,100

12    special assessment due and payable today.

13           While on supervision, sir, you must comply with all of

14    the mandatory and standard conditions that have been adopted

12:32:41 15    by this Court.  They are set forth in Part D of the report.

16           In addition, I'm ordering all of the same conditions

17    that I ordered at the original sentencing.  I incorporate

18    all of them herein.

19           Mr. O'Shea, would you like me to recite them today?

12:32:59 20                   MR. O'SHEA:  No, Your Honor.

21                  THE COURT:  And, Mr. Brown, Mr. McDonough, do

22    you wish for me to recite them?

23                 MR. BROWN:  No, thank you.

24    Thank you, Your Honor.

12:33:08 25               THE COURT:  Let me inform you, sir, that you

1    do have the right to appeal your conviction and sentence.

2    If you cannot afford to appeal, the cost will be borne by

3    the Government.

4         I do, in fact, find the sentence to be sufficient, but

12:33:19 5    not greater than necessary, to satisfy the purposes of

6    sentencing.

7         I have, in fact, concluded that the original sentence

8    is, once again, the appropriate sentence, and that is after

9    a de novo review.

12:33:34 10         I will indicate that I believe the loss amount was a

11    conservative amount, and the defendant could very well have

12    received more levels had the Government wished to argue for

13    more.  I incorporate all of my further reasoning that I gave

14    at the original sentencing.

12:34:07 15         And specifically, sir, I gave the reasons as set forth

16    on page 159, and during that, I refer -- I referred you to

17    my -- the reasons I gave for Mr. Nicolescu's sentencing, and

18    those reasons are set forth on pages 133 and 134 of the

19    original transcript.

12:34:34 20         And let me read that reasoning now into the record,

21    and it's the same reasoning that I give today.

22         "I do consider this to be a very serious scheme that

23    warrants a very serious sentence.  The defendant victimized

24    a large number of people from another continent.  The

12:34:58 25    complexity of the scheme allowed the defendant's criminal

1    behavior to continue unabated for nearly a decade.

2        "I find that tremendous resources had to be used from

3    a number of governments, as well as private sector forensic

4    computer experts.  They were all expended in an effort to

12:35:17 5    capture this defendant and others and stop them from

6    victimizing even more people.

7        "And, frankly, I see many defendants come before who

8    simply have little or no chance of achieving in life due to

9    their circumstances.

12:35:30 10        "But, you, sir, are very different.  You were given

11    the gifts of tremendous intelligence and skill, and instead

12    of using those gifts for good, you chose a path of crime.

13    And you did it because of greed.

14        "You did not want to work hard enough to earn money

12:35:49 15    honestly.  But you certainly had the ability to do so.

16        "I also find that a lengthy sentence is appropriate in

17    order to protect the public from further crimes and to deter

18    similar conduct.  Such a sentence is necessary to send a

19    message to others like the defendant, who operate well

12:36:08 20    planned and what I call heartless computer crimes.

21        "I want to send the message that if you engage in this

22    conduct, you are going to be caught and justice will be

23    served.  And when you are caught, the consequences are very

24    serious."

12:36:23 25        It is for those reasons that I found at the original

1    sentencing and I find at this sentencing that the sentence

2    is sufficient, but not greater than necessary, to satisfy

3    the purposes of sentencing.

4         Now, I did identify the mitigating factor of the

12:36:49  5    defendant having -- the defendant did, in fact, give a

6    proffer.  That mitigating factor still exists today, and

7    that is why I have given Mr. Miclaus a one-level variance.

8         I am compelled, Mr. O'Shea, to address your argument

9    here in court and in your briefing regarding the six levels

12:37:23 10    that the Sixth Circuit took off.

11         But I originally gave a five-level downward departure

12    for purely legal, technical reasons.  The resulting

13    guideline range originally was above the statutory maximum.

14    Had I known that those six levels were inappropriate, I

12:37:54 15    would not have been required to depart downward and

16    certainly would not have done so.  I then gave Mr. Miclaus

17    the variance as stated in my opinion.

18         So the question is, does the defendant deserve a

19    further variance based upon the Sixth Circuit opinion and

12:38:20 20    based upon all of the totality of the circumstances?  And my

21    answer has to be no.  The defendant received a total

22    sentence that this conduct deserves.

23         Mr. O'Shea, first of all, sir, any objections?

24              MR. O'SHEA:  Other than the arguments that

12:38:40 25    I've made acknowledging your ruling, Your Honor, no.

1           THE COURT:  And is there anything further?

2           MR. O'SHEA:  Judge, just for the record, we

3    originally, in our original brief, indicated that there was

4    a potential application of the First Step Act, as we said in

12:38:57 5   our supplemental brief.  We found that not to be the case.

6        Just wanted to be clear that we were -- as soon as we

7    found out about how the law really works, we notified the

8    Court as fast as we could.

9           THE COURT:  And, Mr. O'Shea, when we had our

12:39:14 10  conference call, I indicated to you, I simply did not

11   understand what you were asking of me.  I now understand

12   what you were getting at.

13       How about if I just leave it at that?

14          MR. GOLDBERG:  Fair enough, Judge.

12:39:31 15         THE COURT:  Mr. Brown, Mr. McDonough, first of

16   all, gentlemen, any objections?

17          MR. BROWN:  No objections, Your Honor.

18       Thank you.

19          THE COURT:  And secondly, anything further?

12:39:37 20         MR. BROWN:  Nothing further from the

21   Government.

22       Thank you, Your Honor.

23          THE COURT:  All right.  Mr. Miclaus, I really

24   wish you the best.

12:39:45 25      Good luck to you, sir.

1          We're in ajournement, folks.

2                        - - -

3          (Proceedings adjourned at 12:40 p.m.)

4

5

6              **C E R T I F I C A T E**

7

8          I certify that the foregoing is a correct transcript

9     from the record of proceedings in the above-entitled matter.

10

11

12     */s/ Donnalee Cotone          10th of February, 2023*
       DONNALEE COTONE, RMR, CRR, CRC                       DATE
13     Realtime Systems Administrator

14

15

16

17

18

19

20

21

22

23

24

25